[No. C017713. Third Dist. Feb. 3, 1995.]

JERRY SETLIFF, Plaintiff and Appellant, v.
E. I. DU PONT DE NEMOURS & CO. et al., Defendants and
Respondents.

**COUNSEL**

Trezza, Ithurburn, Steidlmayer & Ithurburn and Michael J. Trezza for Plaintiff and Appellant.

Haight, Brown & Bonesteel, JoAnne L. Rosen, Jeffrey B. Margulies, Bolling, Walter & Gawthrop, John P. Coleman, Theresa Y. Robinson, Clapp, Moroney, Bellagamba, Davis, & Vincinich, Christopher W. Wood, Marc H. Baer, Knox, Lemmon, Brady, Anapolsky & Sheridan, Susan J. Sheridan, Angela L. Schrimp, Brobeck, Phleger & Harrison, James Miller, Lawrence J. Gornick, Cairns, Doyle, Lans, Nicholas & Soni, John D. Cairns, Carr, Defilipo & Ferrell, Jeffrey D. Rosen, Sanders & Anderson, Charles W. Sanders, Derek B. Albertsen, Gibson, Dunn & Crutcher, Charles J. Ivie, Stephen J. Burns, Stephen Kimball, William D. Connell, Hardin, Cook, Loper, Engel & Bergez, Raymond J. Bergez, Marshall A. Johnson, John A. Depasquale, Smiland & Khachigian and Christopher G. Foster for Defendants and Respondents.

**OPINION**

**MORRISON, J.**—Plaintiff Jerry Setliff appeals from a judgment in favor of all nonsettling defendants after their demurrers were sustained or their motions for judgment on the pleadings were granted. Plaintiff contends his amended complaint stated a cause of action for negligence and products liability under traditional theories, as well as a cause of action for products liability under alternative liability and market share theories. We agree with the lower court that plaintiff's inability to identify the substance that caused his injuries renders his complaint fatally defective. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Using a Judicial Council form complaint, plaintiff brought suit against 40 named defendants, manufacturers of paint, solvents, strippers, and glue

products. He alleged he had been an employee of Arne's Paint Store in Marysville and was injured by these products. His first cause of action was for products liability based on theories of strict liability, negligence, and breach of warranty. His second cause of action was for negligence.

The complaint contained the following allegations. Plaintiff "was advised by his doctors that defendants' products may have injured him." Defendants so negligently designed, manufactured, and marketed their paint and solvent products to cause those exposed to their fumes to suffer permanent and disabling physical and emotional harm. Defendants negligently designed, manufactured, and marketed their paint and solvent products; the defects included a failure to perform as safely as ordinary consumers would expect, inherent risks in the products, and a failure to give adequate warnings. The common ingredients in defendants' products, with nearly equivalent risks of harm, injured plaintiff over his years of employment and exposure to them. Finally, plaintiff "is unable to identify which of the products separately or jointly injured him, through no fault of his own; so, plaintiff has joined the manufacturers of a substantial market share, if not all major manufacturers, of defective products whose fault concurred in causing his harm."

After more than a dozen defendants demurred, plaintiff agreed to amend his complaint.

Plaintiff's amended complaint had the same two causes of action, for products liability and negligence.[1] Plaintiff again used a form complaint. He retained his original allegations that he had been injured by paint, solvents, strippers, and glue products at Arne's Paint Store and that defendants were negligent in designing, manufacturing and marketing the products, including a failure to warn. In addition he alleged:

"The latter fault consisted of defendants supplying Arne's Paint Store with the products possessing common toxic chemical ingredients which legally caused vital organ damage, including cardiomyopathy and organic anxiety disorder, arising from the cumulative effect of the inhaled intoxicants; and, the deliberate neglect on the part of each defendant, adhering to an industry-wide standard of sacrificing safety for business reasons, by inadequately warning of the dangers associated with the product, which wrongful conduct and defective conditions legally caused the aforedescribed damages. Each

---

[1]Plaintiff failed to name any defendants in his products liability cause of action, so this cause of action reads as against only Doe defendants. This omission appears to be an oversight since all defendants were named in the original complaint. Because the omission is easily cured by amendment, for purposes of our review we construe the complaint as naming all defendants in both causes of action.

product causing plaintiff injury was subject to the same generic description as all defendants' products in that the danger of their use to vital organs and human nerves were [sic] without adequate warning when used for the same purpose, and all warnings accompanying them were so identically inadequate, that each and every product contributed to causing plaintiff injury from the risks of cumulative exposure to each defendant's product, and now prevents plaintiff from identifying the specific chemicals or toxics involved in his injury.

"Additionally, plaintiff cannot identify which defendant manufactured the product or products responsible for his injuries; however, defendant [sic] marketed the products from an identical plan designed to deny warnings to the unknowing public of the true risks associated with the products; and, thus, each defendant's contribution to the cause of plaintiff's injuries cannot be identified through no fault of plaintiff's own but is due to defendants' concealment."

Plaintiff requested as damages wage loss, hospital and medical expenses, general damages, loss of earning capacity, and exemplary damages. In support of his request for exemplary damages, plaintiff alleged from January 1977 to January 1993, defendants knew of the danger in using their products and knowingly refused to caution the public as to their risks. He further alleged the defendants adhered to an industry-wide warning standard that refused to warn of the dangers associated with the products.

Several defendants then demurred. They claimed the complaint failed to state a cause of action and was uncertain.[2] They seized upon plaintiff's admission that he could not identify the product or products that injured him. Other defendants joined in these demurrers.

Plaintiff responded "his Judicial Council form amended complaint contains more allegations than needed to put each defendant on adequate notice of plaintiff's causes of action and theories of recovery." Plaintiff explained he was not charging defendants with defective manufacturing, but deficiencies in marketing. "The common deficiency in all of the products is their effect on polluting the environment. Plaintiff does not know if there is a 'fungible' agent common to all products, but asserts there exists common volatile organic compounds (VOC) or other pollutants from each and every product to varying degrees."

---

[2]Defendant Ellis Paint also demurred on the basis of misjoinder. Since the lower court did not rely on this basis in sustaining the demurrers and it is not raised on appeal, we need not address it.

Plaintiff asserted defendants failed to give adequate warnings and this failure was a common defect in marketing the products. Plaintiff did not know the ingredients of the products or what volatile organic compounds (VOC's) were present from the products in his place of employment. "Since his injury, he has been informed and believes that the VOCs contributed from each and every one of defendants' products to mix with each others and lead to the unexpected result of his disability. He, thus, alleges that the ingredients, whatever they were separately and in combination, cumulatively harmed him primarily because he was denied the warning or information that should have accompanied delivery of each product to protect himself especially at his place of employment."

In reply, several defendants urged plaintiff had failed to allege causation due to his admitted failure to identify the product causing the injury. They argued plaintiff had not stated a cause of action under any nonidentification theory of liability.

In ruling on the demurrers, the court focused on plaintiff's judicial admission that he could not identify the specific substance responsible for his injury. "[T]he Court believes that the inability of the Plaintiff to identify the 'specific chemicals or toxins involved in his injury' is such a deficiency that it renders the entire action (all theories) subject to an unacceptable level of speculation and prevents the Plaintiff from meaningfully alleging a cause of action, and a state of facts from which the Court can conclude that the Defendants violated their duty to Plaintiff and that this violation was a proximate cause of the injuries to Plaintiff." The court sustained the demurrers and granted the motions to strike allegations involving punitive damages. Although the court had "serious doubts" as to whether plaintiff could successfully amend his complaint, it was mindful of the policy of liberality in permitting amendments, and granted 20 days leave to amend.

After plaintiff failed to amend his complaint, the demurring defendants moved for dismissal. Judgments of dismissal were entered for these defendants. Other defendants then moved for judgment on the pleadings on the same grounds as the successful demurrers. Other defendants settled with plaintiff.

On January 26, 1994, the court granted judgment in favor of all nonsettling defendants.

## DISCUSSION

Plaintiff purports to appeal "from the demurrer and judgment on the pleadings granted in favor of defendants and entered herein on January 26,

1994." ■ An order sustaining a demurrer is not appealable; the judgment of dismissal is. (*Otworth* v. *Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 457 [212 Cal.Rptr. 743].) ■ A notice of appeal is to be liberally construed in favor of its sufficiency. (Cal. Rules of Court, rule 1(a); *In re Daniel Z.* (1992) 10 Cal.App.4th 1009, 1017 [13 Cal.Rptr.2d 139].) We construe plaintiff's notice of appeal to be an appeal from the January 26 judgment in favor of all nonsettling defendants.

■ A demurrer tests the sufficiency of a complaint and admits all facts properly pleaded. (*Lane* v. *I.U.O.E. Stationary Engineers* (1989) 212 Cal.App.3d 164, 168 [260 Cal.Rptr. 634].) "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed.' . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. . . . When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58], citations omitted.) Where the demurrer is sustained with leave to amend and the plaintiff elects not to amend, we presume the plaintiff has stated as strong a case as he can and we resolve all ambiguities and uncertainties raised by the demurrer against the plaintiff. (*Casella* v. *City of Morgan Hill* (1991) 230 Cal.App.3d 43, 48 [280 Cal.Rptr. 876].) A judgment on the pleadings is governed by the same standard as a judgment following a successful demurrer. (*Ramirez* v. *USAA Casualty Ins. Co.* (1991) 234 Cal.App.3d 391, 397 [285 Cal.Rptr. 757].) Therefore, we apply an identical standard of review. (*Barker* v. *Hull* (1987) 191 Cal.App.3d 221, 224 [236 Cal.Rptr. 285].)

## I. *Traditional Theories of Negligence and Products Liability*

■ Plaintiff contends he has stated a cause of action under "traditional" common law tort theories of products liability and negligence. "[A]s a general rule, the imposition of liability depends upon a showing by the plaintiff that his or her injuries were caused by the act of the defendant or by an instrumentality under the defendant's control." (*Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588, 597 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 1061].) Proximate cause is a necessary element of actions for both negligence and strict products liability. (*Powell* v. *Standard Brands Paint Co.* (1985) 166 Cal.App.3d 357, 363 [212 Cal.Rptr. 395].)

Plaintiff claims he has identified manufacturers and suppliers of particular products and has alleged exposure to these products caused and contributed

to his injuries. In making this argument, plaintiff ignores the admission in his amended complaint that he is "unable to identify which of the products separately or jointly injured him." He also admitted he could not identify the specific chemicals and toxics involved in his injury or which defendant manufactured the product or products responsible for his injury. Plaintiff is bound by an admission in his pleadings. (*Logan* v. *Southern Cal. Rapid Transit Dist.* (1982) 136 Cal.App.3d 116, 126 [185 Cal.Rptr. 878].) These admissions negate any attempt to allege he was injured by a particular defendant's product. Without this element of causation, plaintiff had failed to state a cause of action under a "traditional" tort theory.

## II. *Alternative Liability*

As the court in *Sindell* recognized, there are exceptions to the rule requiring a plaintiff to identify the defendant whose instrumentality injured him. (*Sindell* v. *Abbott Laboratories, supra*, 26 Cal.3d at p. 598.) One of these exceptions is the alternative liability theory, best exemplified in the celebrated case of *Summers* v. *Tice* (1948) 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91]. (*Sindell, supra*, at p. 598.) In *Summers,* two hunters negligently fired at plaintiff; a shot struck him in the eye. Plaintiff could not identify which hunter hit him. Both hunters were held jointly and severally liable for plaintiff's injuries. The court reasoned that since both were wrongdoers, both negligent towards plaintiff, it would be unfair to make plaintiff identify the one who injured him. "If one can escape the other may also and plaintiff is remediless. Ordinarily defendants are in a far better position to offer evidence to determine which one caused the injury." (*Summers* v. *Tice, supra*, 33 Cal.2d at p. 86.)

In *Sindell* the plaintiff alleged she had been injured by diethylstilbestrol (DES) her mother took during pregnancy. She could not identify the specific manufacturer of the drug her mother took, but joined 11 manufacturers. The court rejected plaintiff's attempt to assert a cause of action under the *Summers* rationale, finding no rational basis or even a reasonable possibility to infer any named defendant was responsible. (*Sindell* v. *Abbott Laboratories, supra*, 26 Cal.3d at p. 603.) "There is an important difference between the situation involved in *Summers* and the present case. There, all the parties who were or could have been responsible for the harm to the plaintiff were joined as defendants. Here by contrast, there are approximately 200 drug companies which made DES, any of which might have manufactured the injury-producing drug." (*Id.* at p. 602.)

 Plaintiff recognizes California courts have applied the alternative liability theory only when all potential tortfeasors have been joined as

defendants. In his amended complaint, plaintiff alleged he "has joined the manufacturers of a substantial market share, if not all major manufacturers, of the defective products whose fault concurred in causing his harm." Plaintiff does not argue this allegation is sufficient to allege all potential tortfeasors have been joined, but argues the alternative liability theory should be expanded in cases such as this.

He finds support for his argument in a comment to the Restatement Second of Torts section 433B. Section 433B, subdivision (3) sets forth the rule of *Summers* v. *Tice, supra,* 33 Cal.2d 80, using its facts as an example. Comment *h* provides: "The cases thus far decided in which the rule stated in Subsection (3) has been applied all have been cases in which all of the actors involved have been joined as defendants. All of these cases have involved conduct simultaneous in time, or substantially so, and all of them have involved conduct of substantially the same character, creating substantially the same risk of harm, on the part of each actor. It is possible that cases may arise in which some modification of the rule stated may be necessary because of complications arising from the fact that one of the actors involved is not or cannot be joined as a defendant, or because of the effect of lapse of time, or because of substantial differences in the character of the conduct of the actors or the risks which they have created. Since such cases have not arisen, and the situations which might arise are difficult to forecast, no attempt is made to deal with such problems in this Section. The rule stated in Subsection (3) is not intended to preclude possible modification if such situations call for it."

Further, he contends his position is supported by *Pereira* v. *Dow Chemical Co.* (1982) 129 Cal.App.3d 865 [181 Cal.Rptr. 364]. In *Pereira,* the plaintiff alleged he suffered renal failure after exposure at work to four specified chemicals manufactured by four specified manufacturers. In reversing summary judgments on the issue of causation, the court stated: "Under the circumstances, it is not plaintiff's duty to identify which of the vapors caused or contributed to the chronic renal failure but, rather, it is the duty of the defendants who supplied [the employer] with their products to prove the contrary." (*Id.* at p. 873.) The court relied on *Summers* v. *Tice* for the proposition that defendants should be the ones to apportion the damages " ' "when it is certain that between them, they did it all." ' " (*Ibid.*)

We decline to expand the doctrine of alternative liability in this case. Here plaintiff's problem is not limited to his inability to identify which defendant caused his injury; he cannot identify "the specific chemicals or toxics involved in his injury." Thus, it is not simply a nonidentification case as to

the tortfeasor; it is also a nonidentification case as to the defective product. This point is made more clearly in his opposition to the demurrers, where plaintiff states he is not aware of the ingredients of the products or what VOC's are present in his place of employment from defendants' products. ■ Plaintiff's papers in opposition are reliable indications of his position on the facts and we may use these statements as admissions against him. (*Mangini* v. *Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1152 [281 Cal.Rptr. 827].) ■ These admissions undercut his contention that VOC's from each of defendants' products contributed to his injury.

As respondents Minwax, Thompson & Formby, and United Gilsonite Laboratories point out, VOC's are not exclusive to paint products. For example, California regulates the percentage by weight of VOC's in antiperspirants and deodorants.[3] (Cal. Code Regs., tit. 17, § 94500 et seq.) Simply tying his injury to VOC's and claiming all of defendants' products contained VOC's does not result in the necessary allegation that defendants caused the injury.

Plaintiff's vague allegations that VOC's in paint products caused his injury is an attempt to put an industry on trial based on the conviction that since he is injured, it must be their fault. (See *Klein* v. *Council of Chemical Associations* (E.D.Pa. 1984) 587 F.Supp. 213, 221.) In *Klein*, a plaintiff who worked in the printing industry sued manufacturers, suppliers, and trade associations, alleging he had contracted bladder cancer due to his exposure to carcinogens by inhaling chemical products used in the industry. The court found plaintiff's failure to identify the specific product causing his injury resulted in a failure to state a cause of action for either negligence or products liability. (*Id.* at pp. 220-223.) The court rejected application of the alternative liability theory. "No case called to the attention of the court has applied a theory of alternative liability where the specific instrumentality of harm has not been identified." (*Id.* at p. 222.)

### III. *Market Share Theory of Liability*

In *Sindell* v. *Abbott Laboratories*, *supra*, the court recognized "[i]n our contemporary complex industrialized society, advances in science and technology create fungible goods which may harm consumers and which cannot be traced to any specific producer." (26 Cal.3d at p. 610.) To provide a remedy for injured consumers, the court modified the rule of *Summers* v.

---

[3]A volatile organic compound is defined as any compound containing at least one atom of carbon, except certain specified chemicals. (Cal. Code Regs., tit. 17, § 94501, subd. (n).)

*Tice* and created a new theory of liability known as market share liability. (*Id.* at pp. 611-612.) ■ "Under the market share theory of liability, a plaintiff harmed by a fungible product that cannot be traced to a specific producer may sue various makers of the product if the plaintiff joins a substantial share of those makers as defendants." (*Richie* v. *Bridgestone/ Firestone, Inc.* (1994) 22 Cal.App.4th 335, 338 [27 Cal.Rptr.2d 418].)

■ Plaintiff contends he has stated a cause of action under the market share theory of liability because he has alleged he joined "the manufacturers of a substantial market share" of the products that injured him.[4] In focusing only on the joinder requirement of the market share theory, plaintiff ignores another requirement. The court in *Sindell, supra,* applied this new theory of liability to fungible goods, in that case a drug produced from an identical formula. (26 Cal.3d 588, 611.)

This prerequisite of fungibility was found to preclude extension of the market share theory of liability to the asbestos industry in *Mullen* v. *Armstrong World Industries, Inc.* (1988) 200 Cal.App.3d 250, 255-257 [246 Cal.Rptr. 32]. The *Mullen* court noted that unlike DES, which was produced from an identical formula, ". . . asbestos is a generic designation possessing a rainbow-like diversity and a bewildering array of potential uses." (*Id.* at p. 256, fn. omitted.)

Plaintiff has not alleged his injury was caused by a fungible product. He identifies the product as "paint, solvents, strippers and glue products." Although he claims the products possessed "common toxic chemical ingredients," in response to defendants' demurrers he admits he "does not know if there is a 'fungible' agent common to all of the products . . . ." Again, plaintiff's admission defeats his attempt to state a cause of action. Without an allegation of a fungible product, plaintiff cannot state a cause of action under the market share theory of liability.

### IV. *Other Theories of Liability*

Below plaintiff urged he had stated a cause of action under the enterprise liability theory set forth in *Hall* v. *E. I. Du Pont de Nemours & Co., Inc.* (E.D.N.Y. 1972) 345 F.Supp. 353. His allegations of industry-wide inadequate warnings and an identical marketing plan to deny warnings could be read as an attempt to state a cause of action under a concert of action theory. ■ Plaintiff does not raise on appeal the contention he has stated

---

[4]At oral argument plaintiff conceded that he did not state a cause of action under the market share theory of liability.

a cause of action under either theory, and so is deemed to have abandoned or waived them. (*Hambrose Reserve, Ltd.* v. *Faitz* (1992) 9 Cal.App.4th 129, 133 [11 Cal.Rptr.2d 638]; *Pitman* v. *City of Oakland* (1988) 197 Cal.App.3d 1037, 1048 [243 Cal.Rptr. 306].) Nor does he assert any other theory of liability to save his complaint. Given his admissions that he cannot identify either the specific manufacturer of the defective product or the specific substance that injured him, we can think of no theory that would permit recovery.

The judgment is affirmed.

Sparks, Acting P. J., and Davis, J., concurred.