Filed 12/20/22  Red E Services v. Sim CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| RED E SERVICES LLC, | B315401 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV35928) |
| v. | |
| KENNETH TATLONG SIM et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lia Martin, Judge.  Reversed and remanded with directions.

Ervin Cohen & Jessup and David N. Tarlow for Plaintiff and Appellant.

Tin Kin Lee Law Office and Tin Kin Lee for Defendants and Respondents.

————————————

Plaintiff Red E Services LLC (Red E) sued Kenneth Tatlong Sim and several other defendants[1] for breach of contract, fraud, and other related claims. Red E alleged that defendants failed to pay what they owed under agreements to provide "consulting services" for the recommissioning of a hospital and the relocation of a kitchen at a nursing home. Defendants demurred on the ground that Red E engaged in work requiring a contractor's license but failed to allege, as required under Business and Professions Code[2] section 7031, subdivision (a), that it had such a license. The trial court sustained the demurrer and dismissed Red E's complaint without leave to amend.

Red E does not dispute it has no contractor's license. It argues it can pursue compensation for all services rendered because Red E never acted as a contractor but only as a consultant. Red E claims as a fallback that, to the extent it provided certain services requiring a contractor's license, it is not precluded from bringing suit to recover damages for the noncontracting services Red E provided. We agree with Red E's fallback claim and reverse in order to allow it an opportunity to amend its complaint to allege claims for noncontractor services only.

**FACTS AND PROCEEDINGS BELOW**

In the operative first amended complaint, Red E alleged that defendants failed to pay invoices for Red E's work on two

---

[1] These defendants are Allied Pacific of California IPA, Network Medical Management, Inc., 531 W. College, LLC, AHMC Healthcare Inc., and Sunny View Skilled Nursing.

[2] Unless otherwise specified, subsequent statutory references are to the Business and Professions Code.

2

projects—one involving the recommissioning of a hospital,[3] and the second for the relocation of a kitchen at the Sunny View nursing home.[4]  Against each set of defendants, the complaint alleges causes of action for breach of oral contract, fraud, quantum meruit, open book account, and account stated.

## A.    *The Hospital Project*

According to the complaint, in July 2018, Sim contacted Red E to request consulting services for recommissioning a hospital that had recently closed down in Los Angeles.  Red E presented Sim with a proposal "for consulting services and to conduct Operational Assessments[,] Equipment Inventory, Startup and Re-commissioning Services for" the hospital.  These services included "act[ing] as 'Owner's Representative' in the various phases of building and systems assessments, repairs, startup, re-commissioning and other processes required to safely and effectively 'restart' the facility to a desired operational level," "assess[ing] the operational suitability of systems," conducting "[p]hased startup of assessed systems including anomaly monitoring and adjustment to accepted and/or regulated operational standards," "assess[ing] for repairs, vendor/contractor support, re-conditioning, replacement or other," "[c]oordinat[ing] repairs and phasing with vendor/contractual support to address systems re-commissioning and startup," "[p]rovid[ing] [the hospital's o]wner with a report on the condition of all assessed

---

[3] The complaint identifies the "hospital defendants" as Sim, Allied Pacific of California IPA, Network Medical Management, Inc., 531 W. College, LLC, and AHMC Healthcare.

[4] The Sunny View defendants are Sim and Sunny View Skilled Nursing.

systems and equipment, including consultative recommendations for recovery as appropriate," and "[p]rovid[ing] organization and development of required documentation, permits, licenses and certifications required for assessed building systems." The proposal did not specify a total project cost, but instead included hourly billing rates for several categories of Red E employees, with the provision that "[o]nly hours/work performed will be billed—on a bi-weekly basis as the work proceeds."

According to the complaint, Sim agreed on behalf of the hospital defendants that Red E should perform the work on the terms proposed, but declined to sign the proposal or any written contract. Red E subsequently began work and presented the hospital defendants with monthly invoices in August and September, which the defendants paid, followed by a third invoice in October 2018, which defendants paid only in part. Red E continued working on the hospital project through the end of the year and sent several additional invoices, all of which defendants refused to pay. According to Red E, the outstanding balance for these invoices is $136,061.06, not including interest.

Red E included copies of the unpaid and partially paid invoices as exhibits attached to the complaint. These invoices detailed a wide range of services Red E provided. One representative example, from an invoice issued October 19, 2018, reads as follows: "Building Recommissioning Work: Jared Winn (09/01/2018–09/30/2018) Repair plumbing and ceiling leaks; Cleaned up flood and water damage in Lab; Removed large sections of ceiling around [l]ab leak to further inspect and repair plumbing main line; Miscellaneous hardware repairs; Patching/Painting; Clean-up work in equipment rooms; Flush all water lines at all sink, toilet and shower nozzles; pick up

4

grounds, cleaned up parking lot and made periodic rounds for clean-up; replaced all burned out lights in Urgent Care & standardized lights from cool white to daylight to meet new 30 ft. candles task lighting requirements, and replaced all cracked and damaged lenses; Per Stephanie removed exam light in Urgent Care exam room; Removed under-sink covers to assess space and power availability for instant-hot water dispensers." The invoices listed many other services, including watering plants, assisting with a movie shoot, and seeking bids for equipment, repairs and services, among others.

In its complaint, Red E acknowledged that the invoices it sent to Sim included "some general maintenance and repair[ ]" work but claimed that this work did not require a contractor's license, and that this work was "provided pursuant to [an] oral . . . agreement made between [Red E] and Sim, on behalf of the [hospital defendants], at the time that said defective conditions at the property were discovered in or about October of 2018."

## B.    *The Sunny View Project*

Red E alleged a similar pattern of conduct by the Sunny View defendants, who operated the Sunny View Care Center, a nursing facility in Alhambra. In August 2018, after work had begun on the hospital project, Sim requested that Red E "provide consulting services related to the relocation of the [Sunny View] facility's [k]itchen." Red E immediately began work, and about two weeks later sent a proposal to Sunny View regarding the project.

According to the proposal, Red E planned to provide "consulting services and to conduct Operational Assessments to relocate a kitchen, including startup and training for the food services operations." Red E was to "[s]erve as the 'Owner's

5

Representative' in the various phases of design, building and systems assessments, repairs, construction, startup, and other processes required to safely and effectively 'relocate and restart' the food services." In addition, Red E agreed to "[a]ssess the operational suitability of existing systems and processes for the relocation site, including, but not limited to" "[k]itchen operations, menu and diet considerations for the resident population and needs," "Life Safety Systems," "Communications Systems," "HVAC/Refrigeration systems (including ductwork, chillers, and boilers)," "[c]entral plant systems (including combined heat, power and steam distribution)," "Water/Plumbing systems (including sanitation, fire suppression, and distribution)," "Lighting/Electrical systems (including overhead lights and electric distribution)," "[c]ircuitry loads (including connected equipment)," "Natural Gas Systems," and "[o]ther systems as appropriate."

As was the case with the hospital proposal, the Sunny View proposal provided that "[o]nly hours/work performed will be billed—on a bi-weekly basis as the work proceeds." Again, the Sunny View defendants did not sign the estimate. Red E sent Sim two invoices for its work on the Sunny View project, which the Sunny View defendants failed to pay. According to Red E, the total unpaid balance on these invoices is $12,772.50, not including interest.

After sending the first invoice, Red E sent a new revised proposal, which expanded the scope of work to include the following additional services: "Technical and administrative oversight of the project to coordinate project delivery items, reports, updates and ad hoc informational requests as received from time to time in the course of the project; [i]ncluding phasing

and vendor/consultants/[i]nspector of [r]ecord contract support"; "Support the organization with OSHPD, CMS, Licensing, Accreditation (TJC), Life Safety Code (LSC) compliance, general safety and other federal, state, and local regulatory compliance requirements, and support those agencies with required documentation, submittals, permits, licenses, certifications, meetings and inspections"; and "[s]upport the kitchen with startup and training for the new food services equipment and operations."

The services billed to the Sunny View defendants were more limited than those to the hospital defendants. In the first invoice, Red E billed the Sunny View defendants for "Kitchen Relocation Project Meetings; Project Management; Utility Relocation Coordination;" "Menu Consulting; Kitchen Equipment Selection; Kitchen Design Consulting;" "Basement Master[-]planning; Kitchen Menu/Equipment Design; OSHPD/Licensing Kitchen Design & Construction Feasibility Consulting; [and] OSHPD/Licensing Utility Relocation Consulting." The second invoice listed only "Construction Consulting Services" by two Red E employees, with no further details. The invoices do not indicate that Red E performed or managed any construction or repair work on the Sunny View project.

## C. *Trial Court Proceedings*

On August 26, 2020, defendants demurred to the operative first amended complaint, arguing that in order to bring its suit, Red E was required under section 7031, subdivision (a) to allege that it held a contractor's license, but had failed to do so. The trial court sustained the demurrer without leave to amend and entered judgment in favor of defendants.

7

## STANDARD OF REVIEW

"A demurrer tests the sufficiency of a complaint and admits all facts properly pleaded." (*Setliff v. E. I. Du Pont de Nemours & Co.* (1995) 32 Cal.App.4th 1525, 1533.) When the trial court sustains a demurrer, we review "de novo to determine whether the complaint states a cause of action as a matter of law." (*Phoenix Mechanical Pipeline, Inc. v. Space Exploration Technologies Corp.* (2017) 12 Cal.App.5th 842, 846 (*Phoenix*).) In so doing, we " 'must assume the truth of the complaint's properly pleaded or implied factual allegations' " (*Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, 1038), subject to the exception that we are "not required to accept the truth of alleged facts in an amended complaint that are inconsistent with the allegations in a superseded complaint unless the inconsistencies are adequately explained." (*Phoenix*, *supra*, at p. 846.)

We review the trial court's decision to deny the plaintiff leave to amend for abuse of discretion (Code Civ. Proc., § 472c, subd. (a)), and "must determine whether there is a reasonable possibility that the defect [in the pleading] can be cured by amendment." (*Phoenix*, *supra*, 12 Cal.App.5th at p. 847.)

## DISCUSSION

### A.   *Contractor Licensing Statutory Background*

The Contractors' State License Law (CSLL; § 7000 et seq.) "provides 'a comprehensive scheme which governs contractors doing business in California.' " (*Judicial Council of California v. Jacobs Facilities, Inc.* (2015) 239 Cal.App.4th 882, 894.) Its purpose "is to protect the public from incompetence and dishonesty in those who provide building and construction

8

services.  (*Lewis & Queen v. N. M. Ball Sons* (1957) 48 Cal.2d 141, 149-150 . . . .)  The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business." (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995.)  The law "imposes strict and harsh penalties for a contractor's failure to maintain proper licensure." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 418.)

"Section 7031, subdivision (a) is the primary enforcement mechanism for the CSLL."  (*WSS Industrial Construction, Inc. v. Great West Contractors, Inc.* (2008) 162 Cal.App.4th 581, 588.)  Under this statute, "no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that they were a duly licensed contractor at all times during the performance of that act or contract regardless of the merits of the cause of action brought by the person."  (§ 7031, subd. (a).)  In a suit to recover damages for work requiring a contractor's license, a trial court may sustain a demurrer without leave to amend if the plaintiff fails to allege that it held such a license. (See *Banis Restaurant Design, Inc. v. Serrano, supra*, 134 Cal.App.4th at pp. 1043-1047.)

Although "section 7031 can have harsh and seemingly unfair effects" (*Judicial Council of California v. Jacobs Facilities, Inc., supra*, 239 Cal.App.4th at p. 895), the Legislature's intent in enacting the statute to protect the public from unlicensed

contractors is clear, and "it is well settled that section 7031 applies despite injustice to the unlicensed contractor." (*Hydrotech Systems, Ltd. v. Oasis Waterpark*, *supra*, 52 Cal.3d at p. 995.)  Thus, contractors are barred from recovering even in cases where they were unlicensed for only part of the time when they were performing contracting work (*WSS Industrial Construction, Inc. v. Great West Contractors, Inc.*, *supra*, 162 Cal.App.4th at pp. 594-596), or where the other party acted in bad faith and never intended to pay the contractor from the beginning.  (*Hydrotech*, *supra*, at p. 998.)

The CSLL defines "contractor" as "synonymous with 'builder,' " or, in other words, "any person who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or herself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including . . . the cleaning of grounds or structures in connection therewith, . . . and whether or not the performance of work herein described involves the addition to, or fabrication into, any structure, project, development or improvement herein described of any material or article of merchandise."  (§ 7026.)  The definition is expansive enough to include trades such as interior decorating (*Franklin v. Nat C. Goldstone Agency* (1949) 33 Cal.2d 628, 630) and painting, on the logic that these activities "alter, repair, add to or improve" a structure.  (*Howard v. State* (1948) 85 Cal.App.2d 361, 364.)  It includes not only anyone who performs building work, but also one who agrees to perform such work and

hires another party to do it. (*Eggers Industries v. Flintco, Inc.* (2011) 201 Cal.App.4th 536, 540.)

Red E contends licensure was unnecessary because it acted as a consultant, not a contractor. In *The Fifth Day, LLC v. Bolotin* (2009) 172 Cal.App.4th 939, another division of this court held that a company that provides construction management services but does not act as a contractor as defined in section 7026 does not need a contractor's license. (*The Fifth Day*, *supra*, at pp. 947-950.) But the label Red E attaches to its role is not dispositive. "Unlicensed persons may not finesse the statute by drafting contracts calling solely for unlicensed services where in reality other services requiring a license will be performed." (*Executive Landscape Corp. v. San Vicente Country Villas IV Assn.* (1983) 145 Cal.App.3d 496, 501.)

**B.** ***The Trial Court Erred in Sustaining the Demurrer to Causes of Action Related to the Sunny View Project***

We address the Sunny View project separately from the hospital project because Red E alleged that it reached separate oral agreements to work on each of the two projects. The two Sunny View invoices attached to the complaint make no mention of repair work, nor any other work that on its face fits the statutory definition of contractor. (See § 7026.) Instead, Red E billed the Sunny View defendants for items such as "[k]itchen design," "[b]asement master[ ]planning," and "[m]enu consulting."[5]

_____

[5] Defendants argue that state regulations require therapeutic menus to be approved by a registered dietitian, but that does not make a menu planner a contractor under section 7026.

11

Because the complaint does not show conclusively that Red E performed or agreed to perform work requiring a contractor's license on the Sunny View project, the trial court erred in sustaining a demurrer to Red E's causes of action related to that project.

**C.**    ***The Trial Court Should Have Granted Leave to Amend With Regard to the Hospital Project Causes of Action***

Turning to the hospital project, Red E's unpaid invoices for its work on that project, which are attached as exhibits to the complaint, show that Red E performed significant work requiring a contractor's license.  To take one example, on an invoice dated October 19, 2018, the word "repair" appears at least 27 times, in reference to work Red E claimed its employees performed during the month of September.  These included repairs to the doors, ceiling tiles, plumbing, electrical, and HVAC systems, as well as more vague references to repairs to the building generally.  We can find no reasonable interpretation of this language in the invoice that would allow Red E to escape the broad statutory definition of "contractor," in the sense of "alter[ing], repair[ing], add[ing] to, subtract[ing] from, improv[ing], mov[ing], wreck[ing] or demolish[ing] any building."  (§ 7026.)

Section 7031, subdivision (a) bars Red E from bringing a suit to recover from defendants for such contracting work.  Nor may Red E amend its complaint to make allegations inconsistent with its prior pleadings as to this contracting work to seek recovery.  (*Phoenix*, *supra*, 12 Cal.App.5th at p. 854.)

Some of the work Red E alleges it performed on the hospital project, however, does not fit within the statutory definition of contracting.  Red E invoiced the hospital defendants

12

for work assisting a film crew shooting, watering plants, and consulting work arguably not requiring licensure as stated in *The Fifth Day, LLC v. Bolotin*, *supra*, 172 Cal.App.4th at pages 947-950. Red E contends that the trial court erred by sustaining defendants' demurrer without leave to amend because Red E may be able to prove that it performed its non-contracting work under a separate contract or contracts for that project.

In making this argument, Red E relies on *Phoenix*, *supra*, 12 Cal.App.5th 842, in which we agreed that a plaintiff unlicensed contractor could not recover for contracting work it performed, but nonetheless reversed the trial court's grant of a demurrer in favor of defendants. Because the plaintiff in that case alleged that it performed non-contracting work under separate agreements from any work requiring licensure, it was entitled to seek damages for the non-contracting work. (*Id.* at p. 853.)[6] Likewise, Red E alleges here that after it began work on the hospital project, it discovered that the hospital facilities were in need of repairs, and at that point it reached a separate oral agreement or agreements with the hospital defendants to perform the repairs.

---

[6] In so ruling, we did not attempt to identify the specific billed tasks that did not require a contractor's license because "[a]t this stage of the proceedings, it is sufficient to conclude that a 'reasonable interpretation of the agreement[s] between the parties' is that at least some of the work that [the plaintiff] performed did not require a license." (*Phoenix, supra*, 12 Cal.App.5th at p. 852.) We likewise do not attempt to identify in this opinion which specific tasks allegedly performed by Red E do or do not require licensure.

Defendants disagree, arguing that "a contractor cannot avoid the license requirements by seeking to sever other services performed during the course of the contracting relationship for which a license is not required." They point to cases in which courts barred unlicensed contractors from recovering damages for portions of their work not requiring a contractor's license because "the work plaintiff provided was part of an integrated whole." (*Banis Restaurant Design, Inc. v. Serrano, supra*, 134 Cal.App.4th at p. 1047.) For example, in *WSS Industrial Construction, Inc. v. Great West Contractors, Inc.*, *supra*, 162 Cal.App.4th 581, the plaintiff subcontractor sued to recover unpaid fees from the defendant general contractor for steel construction work the subcontractor performed. A jury awarded damages in favor of the plaintiff, but the Court of Appeal reversed because the plaintiff was not licensed during part of the time it performed the work. (*Id.* at p. 596.) The plaintiff argued that it should at least be allowed to recover for portions of the work that did not require a license, such as drafting shop drawings and ordering anchor bolts. The court disagreed, reasoning that these "were tasks for which the [plaintiff] bid and which were performed in furtherance of the scope of the work included in the subcontract." (*Id.* at p. 592.) Defendants argue that this case is similar, in that Red E's work "had a single objective, the achievement of which required a contractor's license which [Red E] does not have."

We agree with Red E and not defendants given that this matter is at the demurrer stage. Nothing in our decision precludes defendants from seeking to establish in subsequent proceedings that there were not in fact multiple contracts for the hospital project, that Red E acted primarily in the role of a

14

contractor under whatever agreement(s) may have existed, and that any non-contracting services were incidental to Red E's contracting work.  But in reviewing a trial court's decision to sustain a demurrer, "[w]e must accept as true all facts pleaded in the complaint." (*Phoenix*, *supra*, 12 Cal.App.5th at p. 853.)  In its complaint, Red E has not alleged one contract for the hospital project, but rather multiple oral agreements.  "It may therefore seek compensation under those alleged agreements that apply to tasks for which no license was required." (*Ibid.*, fn. omitted.)[7]

---

[7] Because Red E seeks recovery under multiple agreements, we need not and do not decide whether an unlicensed plaintiff may recover damages under the doctrine of severability for work under a single contract that calls for both licensed and unlicensed work.  (Compare *MKB Management, Inc. v. Melikian* (2010) 184 Cal.App.4th 796, 805 ["the doctrine of severability may apply, in the discretion of the trial court"] with *Banis Restaurant Design, Inc. v. Serrano*, *supra*, 134 Cal.App.4th at p. 1047 [suggesting that severability is inappropriate] and *The Fifth Day, LLC v. Bolotin*, *supra*, 172 Cal.App.4th at pp. 963-964 (dis. opn. of Mosk, J.) [no severability].)

## DISPOSITION

The judgment is reversed.  On remand, the second, fourth, sixth, eighth, and tenth causes of action concerning the Sunny View project are to be reinstated.  With regard to the remaining causes of action, Red E shall be permitted to file a second amended complaint seeking compensation only under specific agreement(s) to perform work not requiring a contractor's license.  Each party is to bear its own costs on appeal.

NOT TO BE PUBLISHED


                                        WEINGART, J.

We concur:



        CHANEY, J.



        BENDIX, Acting P. J.

16