[Civ. No. 17824. Third Dist. Oct. 18, 1979.]

A. WALKER, Plaintiff and Respondent, v.
DOYAL THORNSBERRY, Defendant and Appellant.

## COUNSEL

Hiram S. Dillin and David A. Short for Defendant and Appellant.

Gary L. Sweet and Richard L. Enkelis for Plaintiff and Respondent.

## OPINION

EVANS, J.—Defendant Thornsberry appeals from an adverse $9,447.96 judgment. We affirm.

Plaintiff is the assignee for collection of an account receivable of Super Secur Comfort Stations (Super Secur), a division of Aluminum Plumbing Fixture Corporation. Super Secur is a manufacturer of metal prefabricat-

ed restrooms, one of which was sold to defendant, a general contractor, for installation at the Berenda Reservoir Launching Facilities. Super Secur, not licensed as a contractor, agreed to furnish, assemble, and install the unit upon a concrete foundation prepared by defendant or his subcontractors. The restroom came on the jobsite in prefabricated pieces consisting of steel columns, beams, girders, steel connections, metal siding and roof, all precut to size. Super Secur employees assembled the component parts and attached the completed unit to the concrete foundation by means of bolts through a metal channel along the base of the wall.

Defendant failed to pay Super Secur the purchase price of the product.

■ The only issue presented is whether plaintiff's assignor (hereafter plaintiff) is barred from recovery under Business and Professions Code section 7031[1] because he did not possess a contractor's license. The trial court concluded that Super Secur was not required to have a contractor's license to place the prefabricated structure on the site prepared by the defendant and therefore was not precluded from recovery.

"The licensing requirement of Business and Professions Code section 7031 was enacted to protect the public from risks attendant to contracting with incompetent or untrustworthy contractors. (*Davis Co.* v. *Superior Court,* 1 Cal.App.3d 156, 158 [81 Cal.Rptr. 453]; *Rushing* v. *Powell,* 61 Cal.App.3d 597, 604-605 [130 Cal.Rptr. 110].) It reflects the significance the Legislature has placed on the deterrence of unlicensed persons from

[1]Unless otherwise noted, all references are to the Business and Professions Code.

Section 7031 provides: "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract, except that such prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029."

Section 7026 provides: "The term contractor for the purposes of this chapter is synonymous with the term 'builder' and, within the meaning of this chapter, a contractor is any person, who undertakes to or offers to undertake to or purports to have the capacity to undertake to or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith, or the cleaning of grounds or structures in connection therewith, and whether or not the performance of work herein described involves the addition to or fabrication into any structure, project, development or improvement herein described of any material or article of merchandise. The term contractor includes subcontractor and specialty contractor."

engaging in the contracting business. The policy to be served outweighs any harshness which may be sustained by a party. (*Lewis & Queen* v. *N.M. Ball Sons,* 48 Cal.2d 141, 151 [308 P.2d 713].)" (*Scientific Cages, Inc.* v. *Banks* (1978) 81 Cal.App.3d 885, 887-888 [146 Cal.Rptr. 780].) However, it has also been recognized that ". . . the penalties are harsh and there has been no tendency by the courts to overly liberalize the statute's [§ 7031] application." (*Jackson* v. *Pancake* (1968) 266 Cal.App.2d 307, 310 [72 Cal.Rptr. 111].) The contractors licensing law does exempt certain activities from its provisions; section 7045 provides: "(a) Except as provided in subdivision (b) this chapter does not apply to the sale or installation of any finished products, materials or articles of merchandise, which do not become a fixed part of the structure, or shall it apply to a materialman or manufacturer furnishing finished products, materials, or articles of merchandise who does not install or contract for the installation of such items. The term 'finished products' shall not include installed carpets. [¶] (b) This chapter shall apply to: [¶] (1) The construction, installation, alteration, repair, or preparation for moving of a mobilehome when such work is performed upon a site for the purpose of occupancy as a dwelling. [¶] (2) The construction, installation, erection, repair, or preparation for moving of mobilehome accessory buildings or structures when such work is performed upon a site for the purpose of occupancy as a dwelling."

Section 7046 provides: "(a) Except as provided in subdivision (b) this chapter does not apply to any construction, alteration, improvement or repair of personal property. [¶] (b) This chapter shall apply to: [¶] (1) The construction, installation, alteration, repair, or preparation for moving of a mobilehome when such work is performed upon a site for the purpose of occupancy as a dwelling. [¶] (2) The construction, installation, erection, repair, or preparation for moving of mobilehome accessory buildings or structures when such work is performed upon a site for the purpose of human habitation or occupancy."

Defendant argues the exemption of section 7045 is not applicable, and that the evolution of the exemption sections of the contractors licensing law regarding installation of carpet (§ 7058) and on-site construction for the placement of mobilehomes or mobilehome accessory buildings (§§ 7046, 7027) manifests a legislative intent to include within the license law installation of finished products when there is a substantial on-site contribution of work that is considered to be within the specialized building trade.

We agree with the reasoning posed but arrive at the contrary conclusion that the exemption afforded by section 7045 does apply and affords an exemption to Super Secur. An examination of previous judicial discussion of the exempt sections and their predecessors discloses judicial support for our interpretation.

In *Los Angeles Scenic Studios* v. *Television* (1936) 17 Cal.App.2d 356 [61 P.2d 1192], plaintiff sued upon a contract to construct an exhibit for an exposition. Since appeal was on the judgment roll alone, the nature of the exhibit was unclear. However, defendants contended recovery was barred by plaintiff's failure to allege and prove it was a licensed contractor. The Contractors License Law at that time did not apply to: "(g) Any work or operation connected with the sale or installation of any finished product, material, or article of merchandise, which is not fabricated into and does not become a permanent fixed part of the structure; [¶] (h) Any construction, alteration, improvement or repair of personal property except as limited by subdivision (g) of this section." (Stats. 1933, ch. 573, § 2, p. 1484.)

The court observed that "[i]t would appear from the act in general that it was intended to apply to contractors who engage in work upon structures or projects which are or are to become a part of the real property upon or in connection with which the work is done. The portions of section 2 above quoted specifically exempt from the provisions of the act any construction or repair work upon personal property which is not fabricated into and does not become a permanent fixed part of the structure.

". . . Whether this exhibit took the form of a building or was an exhibit of another nature, we are not required to assume that it was fabricated into and became a permanent fixed part of the Electric Products Building, in which it was located. It is common knowledge that many exhibits in such exposition buildings are not affixed to the premises in such a way as to become a part of the real property. Such an exhibit could well take the form of a small movable building, and the fact that it is called a 'building' would not be conclusive in determining whether or not it was fabricated into and had become a permanent part of the structure within which it was located. . . . If the exhibit in question was not of such a nature that it became a fixed part of the structure in which it was located the complaint stated a cause of action . . . ." (*Id.,* at pp. 358-359.)

Prior to amendment in 1961, section 7045 read "This chapter does not apply to the sale or installation of any finished products, materials or articles of merchandise, which are not actually fabricated into and do not become a permanent fixed part of the structure." (Stats. 1939, ch. 37, p. 385.) In *Costello v. Campbell* (1947) 81 Cal.App.2d 452 [184 P.2d 315], the court determined that installation of cold storage plants used in the operation of a hatchery and poultry ranch was within the exemption where the equipment installed was prefabricated and did not become a permanent fixture. In *E.A. Davis & Co.* v. *Richards* (1953) 120 Cal.App.2d 237 [260 P.2d 805], the installation of a patented prefabricated kitchen unit consisting of seven wall cabinets, six base cabinets, a dishwasher, and a sink attached to the floor and walls was held to come within the exemption to the requirement that the manufacturer be a licensed contractor, despite the necessity for minor plumbing, electrical, and linoleum work incidental to the installation of the finished unit.

*Finley-Gordon Carpet Co.* v. *Bay Shore Homes, Inc.* (1966) 247 Cal.App.2d 131 [55 Cal.Rptr. 378], construed the relevant parts of section 7045 as it presently reads. In that case carpet was installed by a "tackless strip method" under which the carpets could be easily removed without damage to the floor. The court upheld the trial court's finding the carpet did not become a "fixed part of the structure."

In *Johnson* v. *Mattox* (1968) 257 Cal.App.2d 714, 718 [65 Cal.Rptr. 185], plaintiffs, who lacked contractor's licenses, sought recovery for labor and materials in constructing a "baseball school" in which the work performed included installation of a sprinkler system, building various signs and setting them in concrete, and excavating and constructing dugouts. The court held sections 7045 and 7046 were not applicable. "Sections 7045 and 7046 were intended to apply to installations *in which construction activity is merely incidental,* such as the installation of kitchen appliances (*E. A. Davis & Co.* v. *Richards* [1953] 120 Cal.App.2d 237 [260 P.2d 805]), and not to the installation of a sprinkler system, which is constructed out of lengths of pipe and buried in the ground where it is intended to be used." (Italics ours; *ibid.*)

The trial court concluded that Super Secur was not required to have a contractor's license. Implicit in that decision is a determination that the prefabricated unit did not become a fixed part of the structure. Whether the goods installed become a fixed part of the structure is a question of fact. (*Costello* v. *Campbell, supra,* 81 Cal.App.2d at p. 453; *Finley-Gordon Carpet Co.* v. *Bay Shore Homes, Inc., supra,* 247 Cal.App.2d at p. 132.)

The contract between Super Secur and defendant did not require Super Secur to undertake the installation of concrete foundation, rough plumbing, or installation of plumbing fixtures, stalls, wood roofing, and painting upon which to place the prefabricated restroom. Super Secur employees merely assembled the pieces and bolted the structure to the foundation. Their contribution of labor to the finished restroom was at most minor and incidental.

That activity was within the purview of the exemption provided by section 7045.

Our disposition predicated upon the provisions of section 7045 obviates the necessity of determining whether the restroom is personal property within the meaning of section 7046, also providing an exemption to the licensing statute.

The judgment is affirmed.

Paras. Acting P. J., concurred.

**REYNOSO, J.**—I concur in the results. However, I raise a concern pertaining to the status of decisional law. Neither the parties nor the majority have addressed the issue of quantum meruit as a more appropriate vehicle for a theory of recovery. Such a theory respects the intent of the Legislature and does equity. The omission is quite proper for in 1957 the California Supreme Court ruled that equitable theories of recovery cannot be urged in the face of Business and Professions Code section 7031. (*Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 150 [308 P.2d 713].) The all-or-nothing approach to section 7031 is based on the premise that the statute represents a legislative determination that the importance of protecting the public from incompetent or untrustworthy unlicensed contractors outweighs any harshness to a party. (*Id.,* at p. 151.) Even if we accept that the legislative intent was one based on concern for consumer protection,[1] it is questionable whether such a purpose is advanced in the case at hand. Defendant Thornsberry, as a general contractor, is not in the position of a member of the general public who because of the disparity in knowledge and experience is unable to protect himself. Rather, as a general contractor, he is in a position equal to that of the party supplying the building and labor. Thus, he is able to evaluate the nature and quality of the performance for himself. To thereby permit

---

[1]The legislative scheme may also be an effort to give added competitive advantage to the more politically organized licensed contractors.

Thornsberry to avoid payment for the work completed would only result in the statute being used as an " 'unwarranted shield for the avoidance of a just obligation.' " (*Lewis & Queen, supra* [dissent by Carter, J.], at p. 158.) This was never the intent of the statute. It is therefore understandable why the majority labored to fit the present set of facts into the statutory exemption.

The availability of a quantum meruit theory of recovery provides a more reasonable approach to the problem. In appropriate cases the court could take into account the enrichment bestowed by the unlicensed contractor without riddling the licensing statute. The unlicensed contractor would continue to be unable to enforce the contract which undoubtedly offered him greater compensation than a quantum meruit recovery offers.

In sum, the present all-or-nothing approach will continue to lead to efforts to avoid the statute in order to reach just results. This can only result in the nonuniform application of the law and provide little judicial guidance. Another look at equitable theories, including quantum meruit, is due.

A petition for a rehearing was denied November 14, 1979, and appellant's petition for a hearing by the Supreme Court was denied December 20, 1979. Manuel, J., was of the opinion that the petition should be granted.