Filed 4/28/26

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| AVL TEST SYSTEMS, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> HENSEL PHELPS CONSTRUCTION CO., <br><br> Defendant and Respondent. | D086160 <br><br><br> (Super. Ct. No. CVRI2301309) |

APPEAL from a judgment of the Superior Court of Riverside County, Chad W. Firetag, Judge.  Reversed and remanded.

Crowell & Moring, David J. Ginsberg, J. Daniel Sharp, Andrew Holmer, Kenneth Taketa, and Kari G. Ferver for Plaintiff and Appellant.

Pillsbury Winthrop Shaw Pittman, Stephen L. Pessagno; Varela, Lee, Metz & Guarino, Holly M. Brett; Thompson Hine, and R. Michael Viayra, Jr., for Defendant and Respondent.

The Contractors State Licensing Law (CSLL) (Bus. & Prof. Code, §§ 7000–7191)[1] precludes an unlicensed "contractor" (§ 7026) from

---

[1]    Unless otherwise specified, all subsequent statutory references are to the Business and Professions Code.

maintaining an action to recover compensation "for the performance of any act or contract where a license is required." (§ 7031, subd. (a).) A "contractor" is defined by the CSLL as including any person who "does himself or herself or by or through others, construct, alter, . . . , add to, [or] improve . . . any building." (§ 7026.) The CSLL, however, exempts from its licensure requirements, "the sale or installation of any finished products, materials, or articles of merchandise *that do not become a fixed part of the structure.*" (§ 7045, italics added.)

Appellant AVL Test Systems, Inc. (AVL), a manufacturer of vehicle emissions testing equipment, entered a contract with respondent Hensel Phelps Construction Co. (Hensel Phelps) to supply and install AVL's products in a building that Hensel Phelps was constructing for the California Air Resources Board (CARB). In September 2021, after Hensel Phelps had paid AVL more than $73 million dollars on the project, AVL filed a demand for arbitration seeking additional payments. Hensel Phelps defended against AVL's claims in the arbitration in part on the ground that AVL was precluded from seeking such recovery by section 7031, subdivision (a) for having performed an act requiring licensure without a license.

AVL filed this action in the trial court seeking a declaration that its claims for payment were not barred by section 7031, subdivision (a).[2] After the parties filed cross-motions for summary judgment, the trial court granted Hensel Phelps's motion and denied AVL's motion. The court ruled that "section 7045 did not exempt AVL from the requirement of having a

---

[2]     In its complaint, AVL explained that it was bringing this action, notwithstanding the pending arbitration, because "a private arbitration panel lacks power and authority to issue a final and binding award under the [CSLL]; 'the issue is one for judicial determination upon the evidence presented to the trial court.' " This point is not disputed before this court.

contractor's license" because "the evidence shows the parties' contract called for the emissions equipment to become a 'fixed part of the structure' " at issue. On appeal, AVL claims that the trial court erred in granting Hensel Phelps's motion for summary judgment and in denying its motion. AVL contends that the undisputed evidence established that section 7045 exempted it from the CSLL's licensure requirements since its equipment did not "become a fixed part of the structure" under a proper application of section 7045.

We conclude that the trial court erred in resolving the section 7045 exemption issue as a matter of law. Case law provides that, in determining whether section 7045 applies, "[w]hether the goods installed bec[a]me a fixed part of the structure is a question of fact." (*Walker v. Thornsberry* (1979) 97 Cal.App.3d 842, 847 (*Walker*), citing, inter alia, *Costello v. Campbell* (1947) 81 Cal.App.2d 452, 453 (*Costello*); see *Costello*, at p. 453 [issue of whether section 7045 applied was "question[] of fact" on which there was "conflicting testimony of expert and lay witnesses"].)

Here, the voluminous record contains evidence,[3] including competing expert declarations, sufficient to create a triable issue of fact with respect to whether AVL's sale or installation of its equipment was exempt from the CSLL on the ground that such equipment did "not become a fixed part of the structure." (§ 7045.) Therefore, we conclude that the trial court should have denied *both* motions for summary judgment and permitted a trier of fact to resolve this question. Accordingly, we reverse the judgment in favor of

---

[3]     According to Hensel Phelps's brief, "The moving, opposition, and reply submissions . . . include[ed] at least 4,430 pages of briefing and evidence, 381 exhibits, and expert evidence."

Hensel Phelps and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.

In March 2023, AVL filed a complaint containing a single cause of action for declaratory relief. The complaint outlined AVL's relationship with Hensel Phelps on the project and the parties' pending arbitration to resolve their dispute over AVL's claims for payments, including Hensel Phelps's affirmative defense in the arbitration that AVL's claims were barred on the ground that it had acted as a contractor without a license in violation of section 7031, subdivision (a).

The complaint alleged further that "AVL is entitled to a declaratory judgment that AVL is not a building contractor, and was not acting in the capacity of a building contractor, in performing its contracts to supply and install vehicle emissions testing equipment for CARB." AVL explained that "[t]he CSLL 'does not apply to the sale or installation of any finished products, materials, or articles of merchandise that do not become a fixed part of the structure.' " (Quoting § 7045.) AVL alleged that "[a]ll of AVL's emissions testing equipment is portable and does not become permanently affixed to buildings or structures. Thus, the CSLL is not intended to apply to AVL's business activities."

AVL alleged further: "The State governmental agency charged with regulating licensure is the California State Licensing Board ('CSLB'). . . . Applying the CSLL statutory scheme, the CSLB does not require persons to maintain a contractor's license for the performance of acts or contracts calling for the installation of such finished products, materials, or articles of merchandise. The term used for such vendors is 'FFE installers,' with

4

FFE standing for: Fixtures, Furnishings, or Equipment. AVL is exactly the type of FFE installer contemplated by section 7045 and routinely found to be exempt from the California contractor's licensing requirements by the CSLB." AVL acknowledged that it applied for and, in May 2019, received a Class A license from the CSLB. AVL, however, claimed that it applied for such a license at the "request of [Hensel Phelps]" and not because it was legally required to do so.

In its cause of action for declaratory relief, AVL explained that the parties disputed whether AVL was acting in the capacity of a contractor under the CSLL. AVL sought a "declaratory judgment that AVL's claims for payment are not barred by the CSLL, including . . . [s]ection 7031."

## B.

Hensel Phelps filed a motion for summary judgment in which it claimed that the trial court should summarily adjudicate AVL's sole cause of action for declaratory relief in favor of Hensel Phelps. Hensel Phelps maintained that the undisputed material facts demonstrated that AVL's work on the project required a contractor's license and that AVL had failed to obtain a contractor's license for more than a year after beginning work on the project.

In its supporting brief, Hensel Phelps described the parties' contract as well as four change orders that expanded AVL's scope of work. Hensel Phelps explained that the parties entered an initial contract in May 2018 for AVL to "design, engineer, fabricate, and install 4-wheel drive chassis dynamometers." Hensel Phelps argued that this contract "required substantial construction work, including at least $1.05 million to install underground utilities, equipment, mechanical and plumbing systems, electrical systems, and control systems," and included specifications

5

pertaining to "a broad range of construction work, such as fire suppression, plumbing, HVAC, electrical, communications, electrical safety and security, earthwork, exterior improvement, and utilities." Hensel Phelps also contended the parties agreed to four change orders related to additional products to be supplied by AVL through which AVL agreed to perform "additional construction work."

Hensel Phelps further argued that, although AVL obtained a contractor's license in May 2019, it had performed substantial amounts of construction work on the project before this time, which Hensel Phelps detailed in its brief. Thus, Hensel Phelps argued that all AVL's claims for payment were barred by section 7031, subdivision (a).

Hensel Phelps supported its motion with several declarations and numerous exhibits that detailed the project's scope and characteristics as well as the work performed by AVL and its subcontractors. Hensel Phelps also filed a motion in which it asked the trial court to take judicial notice of AVL's licensure history with the CSLB.

AVL filed an opposition to Hensel Phelps's motion for summary judgment. In its opposition, AVL argued that Hensel Phelps had failed to carry its initial burden in moving for summary judgment by failing to address AVL's claim that it was exempt from licensure pursuant to section 7045. AVL further maintained that Hensel Phelps had failed to demonstrate that section 7045 did not apply since there was "ample evidence from which a trier of fact could find that AVL's role was that of an equipment supplier." AVL also contended that neither its performance of "incidental non-construction work" on the project nor its hiring of licensed contractors to perform the

6

"incidental" installation of its moveable equipment demonstrated that it needed a license under the CSLL.

AVL supported its opposition in part with reference to the evidence that it offered in support of its own motion for summary judgment,[4] which included declarations offered by two experts on contractor licensing issues, which we discuss in detail in part II.C below. AVL also lodged two additional declarations, including one from an AVL employee who served in a leadership role on project, who explained that AVL obtained a contractor's license from the CSLB only because Hensel Phelps requested that it do so and not because AVL believed such license was required.

C.

AVL also filed its own motion for summary judgment in which it claimed that it was entitled to judgment as a matter of law on its declaratory relief cause of action. Among other arguments, AVL contended that it was exempt from licensure under section 7045 because "[a]ll AVL equipment is designed to be removable, with none of it permanently affixed to the building structure." AVL specifically mentioned that its dynamometers are "designed to be replaced," and that its "other test and supporting equipment is also movable." AVL supported these statements with citations to declarations from the two experts mentioned above that it lodged in support of its motion.

AVL also supported its motion with several other supporting declarations and numerous exhibits. Among such evidence was a declaration from an AVL employee who described the ways in which AVL's products were installed during the project in support of AVL's contention that its products

---

[4] The trial court entered an order granting the parties' stipulation that, in opposing summary judgment, "the parties need not refile any declarations or evidence already filed in support of the Cross Motions for Summary Judgment."

7

had not become a fixed part of a structure.  For example, the AVL employee stated that the dynamometers for the project were designed and built "to allow for removal and replacement," and they could "be simply unbolted for removal and replacement."

Hensel Phelps filed an opposition to AVL's motion in which it argued that AVL's work on the project was not exempt from licensure pursuant to section 7045.  It argued that this was so in part because "the materials and equipment installed as part of AVL's work were permanently attached or affixed to the Project's structure (e.g., through welding, bolting, anchors, seismic bracing, penetrations through walls and ceilings) and the underlying realty (e.g., conduit buried in concrete)."

In addition to the evidence that it offered in support of its own motion for summary judgment, Hensel Phelps supported its opposition with a declaration from an expert on contractor licensing issues, which we discuss in detail in part II.D, below.[5]

D.

After the parties filed reply briefs, and the trial court held a hearing, the court entered an order granting Hensel Phelps's motion for summary judgment and denying AVL's motion.[6]  In its order, the court explained that the parties' motions presented a single issue, "whether AVL was required to have a contractor's license."  The court resolved that issue by "find[ing] that AVL was required to have a contractor's license."

---

[5]     Hensel Phelps also filed an "Updated Compendium of Exhibits" in support of its motion for summary judgment that referred to the expert's declaration that it lodged in opposition to AVL's motion.

[6]     In its order, the court also granted Hensel Phelps's request for judicial notice and overruled numerous evidentiary objections that AVL raised.

8

The trial court rejected AVL's contention that it was exempt from licensure under section 7045. The court reasoned in part: "[T]he evidence shows the parties' contract called for emissions equipment to become a 'fixed part of the structure' given the substantial size and weight of AVL's equipment and materials, by way of substantial permanent connections — such as embeds, anchor plates, welding, penetrations through walls and floors, conduit encased in concrete, and other works — that formed a significant part of AVL's scope of work." The court also added, "The work performed here to house AVL's equipment required substantial installation of underground mechanical and plumbing, electrical and control systems that cannot be characterized as merely incidental to the installation."

In addition, the trial court concluded that two cases on which AVL had relied in support of its claim of exemption under section 7045 were distinguishable. (Citing *Walker, supra*, 97 Cal.App.3d 842 and *E.A. Davis & Co. v. Richards* (1953) 120 Cal.App.2d 237 (*E.A. Davis*).) The trial court also cited a third case, *Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, 1046 (*Banis*), which the court stated was "more analogous" to the present case than *Walker*. We address each of these cases in our discussion below.

The court subsequently entered a judgment in favor of Hensel Phelps. AVL appealed from the judgment.

## II. DISCUSSION

AVL claims that the trial court erred both in granting Hensel Phelps's motion for summary judgment and in denying AVL's motion. We agree with the former contention and disagree with the latter.

9

A.

A moving party is entitled to summary judgment only when "there is no triable issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

We conduct a de novo review of a summary judgment (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860), examining the whole record, and considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and properly sustained. (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) Evidence presented in opposition to summary judgment is liberally construed, with any doubts resolved in favor of the party opposing the motion. (*Ibid.*)

B.

"The CSLL provides 'a comprehensive scheme which governs contractors doing business in California.' " (*Judicial Council of California v. Jacobs Facilities, Inc.* (2015) 239 Cal.App.4th 882, 894 (*Judicial Council*).) "The purpose of the [CSLL] is to protect the public from incompetence and dishonesty in those who provide building and construction services." (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995 (*Hydrotech*).) To that end, the law "imposes strict and harsh penalties for a contractor's failure to maintain proper licensure. Among other things, the CSLL states a general rule that, regardless of the merits of the claim, a contractor may not maintain any action, legal or equitable, to recover compensation for 'the performance of any act or contract' unless he or she was duly licensed 'at all times during the performance of that act or contract.' " (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.*

10

(2005) 36 Cal.4th 412, 418 (*MW Erectors*), italics omitted, quoting § 7031, subd. (a).)[7]

In applying section 7031, "[c]ourts have taken their cue from the Legislature in enforcing the letter of the law, consoled by the Legislature's ' " 'determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties.' " ' [Citation.] Accordingly, if a contractor is unlicensed for any period . . . while delivering construction services, the contractor forfeits *all* compensation for the work, not merely compensation for the period when the contractor was unlicensed. [Citation.] . . . Because section 7031 is held to apply ' "[r]egardless of the equities" ' [citation], unlicensed contractors are prohibited from asserting equitable defenses, such as estoppel . . . [or] forfeiture. [Citation.] On the contrary, ' " ' [c]ourts may not resort to equitable considerations in defiance of section 7031.' " ' [Citation.] As a result, an unlicensed contractor is subject to forfeiture even if the other contracting party was aware of the contractor's lack of a license, and the other party's bad faith or unjust enrichment cannot be asserted by the contractor as a defense to forfeiture." (*Judicial Council, supra*, 239 Cal.App.4th at pp. 896–897.) "Both owners and general contractors are entitled to protection against illegal subcontract work by unlicensed persons.

---

7     Section 7031, subdivision (a) provides in part: "[N]o person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that they were a duly licensed contractor at all times during the performance of that act or contract regardless of the merits of the cause of action brought by the person."

Hence, an unlicensed subcontractor may not recover compensation for his work from either the owner or the general contractor." (*Hydrotech, supra*, 52 Cal.3d at p. 997.)

To determine whether this "strict and harsh penalt[y]" regime bars a claim (*MW Erectors, supra*, 36 Cal.4th at p. 418) requires analysis of whether the party seeking compensation was acting as a "contractor" under the CSLL. (See, e.g., *Banis, supra*, 134 Cal.App.4th at p. 1043 ["The initial question before us is whether plaintiff was 'engaged in the business or acted in the capacity of a contractor,' thereby bringing section 7031 into play"].) As relevant here, " 'a contractor is any person who undertakes to or offers to undertake to . . . , or does himself or herself or by or through others, construct, alter, [or] repair . . . any . . . structure, project, development or improvement, or to do any part thereof. . . .' " (*Judicial Council, supra*, 239 Cal.App.4th at pp. 894–895, quoting § 7026.)[8]

---

8       Section 7026 provides in full: " 'Contractor,' for the purposes of this chapter, is synonymous with 'builder' and, within the meaning of this chapter, a contractor is any person who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or herself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith, or the cleaning of grounds or structures in connection therewith, or the preparation and removal of roadway construction zones, lane closures, flagging, or traffic diversions, or the installation, repair, maintenance, or calibration of monitoring equipment for underground storage tanks, and whether or not the performance of work herein described involves the addition to, or fabrication into, any structure, project, development or improvement herein described of any material or article of merchandise. 'Contractor' includes subcontractor and specialty contractor. 'Roadway' includes, but is not limited to, public or city streets, highways, or any public conveyance."

Notwithstanding "the broad definition of contractor supplied by section 7026," (*Kim v. TWA Construction, Inc.* (2022) 78 Cal.App.5th 808, 828) there are "numerous express exemptions from the [CSLL]." (*Hydrotech, supra*, 52 Cal.3d at p. 995.) In particular, since the CSLL's initial adoption in 1939, the law has exempted from its reach the sale or installation of any finished products that do not become a fixed part of a structure pursuant to section 7045. (See Stats. 1939, ch. 37, § 1, p. 385 [providing that CSLL did not apply to "the sale or installation of any finished products, materials or articles of merchandise, which are not actually fabricated into and do not become a fixed part of the structure"].)

Section 7045 provides in full:

> "This chapter does not apply to the sale or installation of any finished products, materials, or articles of merchandise that do not become a fixed part of the structure, nor shall it apply to a material supplier or manufacturer furnishing finished products, materials, or articles of merchandise who does not install or contract for the installation of those items. The term 'finished products' shall not include installed carpets or mobilehomes or mobilehome accessory structures, as defined in Section 7026.2.

> "This chapter shall apply to the installation of home improvement goods, as defined in Section 7151."

In *Walker, supra*, 97 Cal.App.3d 842, the Court of Appeal concluded "that the exemption afforded by section 7045 . . . appl[ied]" to permit a plaintiff's claim for recovery against a general contractor for the sale and installation of certain goods notwithstanding section 7031. (*Id.* at p. 846.) The *Walker* court described the factual and procedural background of the case as follows. The plaintiff, an assignee of Super Secur Comfort Stations (Super Secur), a "manufacturer of metal prefabricated restrooms," sought to recover compensation from the defendant general contractor for the sale and

13

installation of one of the Super Secur restrooms on behalf of the defendant. (*Id*. at pp. 843–844.) "The restroom came on the jobsite in prefabricated pieces consisting of steel columns, beams, girders, steel connections, metal siding and roof, all precut to size. Super Secur employees assembled the component parts and attached the completed unit to the concrete foundation by means of bolts through a metal channel along the base of the wall." (*Id*. at p. 844.) Defendant failed to pay, and the trial court entered a judgment in favor of the plaintiff after concluding that "Super Secur was not required to have a contractor's license to place the prefabricated structure on the site prepared by the defendant and therefore was not precluded from recovery." (*Ibid*.)

On appeal, the *Walker* court affirmed. (*Walker, supra*, 97 Cal.App.3d at p. 843.) In rejecting the defendant's argument that the exemption of section 7045 was inapplicable, the *Walker* court reviewed case law construing section 7045 and its statutory predecessors in a manner that is instructive in resolving the present appeal. The *Walker* court began by discussing *Los Angeles Scenic Studios v. Television Inc.* (1936) 17 Cal.App.2d 356, in which the Court of Appeal considered whether a plaintiff was barred from recovering "upon a contract to construct an exhibit for an exposition." (*Walker*, at p. 846.) The defendant in *Los Angeles Scenic Studios* contended that recovery was barred because the plaintiff had failed to prove it was a licensed contractor. (*Walker*, at p. 846.) Yet, like present day section 7045, "[t]he Contractors License Law at that time did not apply to: '. . . Any work or operation connected with the sale or installation of any finished product, material, or article of merchandise, which is not fabricated into and does not become a permanent fixed part of the structure.' " (*Walker*, at p. 846, quoting

14

Stats. 1933, ch. 573, § 2, p. 1484.)[9] "Since [the] appeal [in *Los Angeles Scenic Studios*] was on the judgment roll alone, the nature of the exhibit was unclear," and the *Los Angeles Scenic Studios* court concluded that it was not "required to assume that it was fabricated into and became a permanent fixed part" of a building. (*Walker* at p. 846, quoting *Los Angeles Scenic Studios*, at p. 359.)

The *Walker* court further noted that in each of the decisions in *Costello, supra*, 81 Cal.App.2d 452, *E.A. Davis, supra*, 120 Cal.App.2d 237, and *Finley-Gordon Carpet Co. v. Bay Shore Homes, Inc.* (1966) 247 Cal.App.2d 131 (*Finley-Gordon Carpet Co.*), the Court of Appeal had applied section 7045 to permit the recovery of compensation for a plaintiff's installation of certain products notwithstanding a defendant's contention that the plaintiff's failure to hold a contractor's license precluded such recovery. (*Walker, supra*, 97 Cal.App.3d at p. 847.) As the *Walker* court noted, "In [*Costello*], the court determined that installation of cold storage plants used in the operation of a hatchery and poultry ranch was within the exemption where the equipment installed was prefabricated and did not become a permanent fixture." (*Walker*, at p. 847.) In *E.A. Davis,* "the installation of a

---

[9] "The Legislature . . . enacted the state's first law providing for the registration of contractors in 1929. (Stats. 1929, ch. 791, §§ 1–14, pp. 1591–1595.)" (*Home Depot, U.S.A., Inc. v. Contractors' State License Bd.* (1996) 41 Cal.App.4th 1592, 1602, fn. 5.) The 1929 statute's definition of contractor contained the following proviso: "provided, that the term contractor, as used in this act . . . shall not include anyone who merely furnishes materials or supplies without fabricating the same into, or consuming the same in the performance, of the work of the contractor as herein defined." (Stats. 1929, ch. 791, § 3, p. 1592.) In 1933, the exception referred to in the *Walker* opinion was added to the statute. (Stats. 1933, ch. 573, § 2, p. 1484.) In 1939, the Legislature codified the law regulating contractors through the enactment of the CSLL. (See *MW Erectors, supra*, 36 Cal.4th at p. 425 [noting that the CSLL was initially adopted in 1939, citing Stats. 1939, ch. 37, § 1, p. 381].)

patented prefabricated kitchen unit consisting of seven wall cabinets, six base cabinets, a dishwasher, and a sink attached to the floor and walls was held to come within the exemption to the requirement that the manufacturer be a licensed contractor, despite the necessity for minor plumbing, electrical, and linoleum work incidental to the installation of the finished unit." (*Walker*, at p. 847.)  And, in *Finley-Gordon Carpet Co.*, the Court of Appeal upheld a trial court's finding that certain carpet did "not become a 'fixed part of the structure,' where the installation of carpets had been performed by a method pursuant to "which the carpets could be easily removed without damage to the floor."  (*Walker*, at p. 847.)  The *Walker* court noted that, in contrast, the Court of Appeal in *Johnson v. Mattox* (1968) 257 Cal.App.2d 714 (*Johnson*) held that section 7045 was not applicable where the plaintiff "sought recovery for labor and materials in constructing a 'baseball school' in which the work performed included installation of a sprinkler system, building various signs and setting them in concrete, and excavating and constructing dugouts."  (*Walker*, at p. 847.)

After this review of the case law, the *Walker* court turned to the case at hand and noted that the trial court had implicitly decided that the "prefabricated unit did not become a fixed part of the structure."  (*Walker, supra*, 97 Cal.App.3d at p. 847.)  In upholding the trial court's conclusion that the plaintiff's assignor was not required to have had a contractor's license, the *Walker* court reasoned: "Whether the goods installed become a fixed part of the structure is a question of fact.  (*Costello*[*, supra,*] 81 Cal.App.2d at p. 453; *Finley-Gordon Carpet Co.*[*, supra,*] 247 Cal.App.2d at p. 132.)  [¶]  The contract between Super Secur and defendant did not require Super Secur to undertake the installation of concrete foundation, rough plumbing, or installation of plumbing fixtures, stalls, wood roofing, and painting upon

16

which to place the prefabricated restroom. Super Secur employees merely assembled the pieces and bolted the structure to the foundation. Their contribution of labor to the finished restroom was at most minor and incidental. [¶] That activity was within the purview of the exemption provided by section 7045." (*Walker*, at pp. 847–848.)

C.

As noted above, in its order granting summary judgment in favor of Hensel Phelps, the trial court concluded Hensel Phelps demonstrated that AVL was not licensed in compliance with the CSLL and that "section 7045 did not exempt AVL from the requirement of having a contractor's license." AVL contends that the trial court erred in concluding, as a matter of law, that AVL or its subcontractors installed products that became a fixed part of a structure under section 7045. This, according to AVL, led the trial court to erroneously conclude that section 7045 did not apply. We agree.

We need look no further than the expert declarations that AVL lodged to determine that Hensel Phelps did not establish as a matter of law the inapplicability of section 7045. " 'Generally, a party opposing a motion for summary judgment may use declarations by an expert to raise a triable issue of fact on an element of the case provided the requirements for admissibility are established as if the expert were testifying at trial. [Citations.] An expert's opinion is admissible when it is "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact . . . .' " [Citation.] Although the expert's testimony may embrace an ultimate factual issue [citation], it may not contain legal conclusions.' " (*Willhide-Michiulis v. Mammoth Mountain Ski Area, LLC* (2018) 25 Cal.App.5th 344, 354 (*Willhide-Michiliulis*); see, e.g., *Strobel v. Johnson & Johnson* (2021) 70 Cal.App.5th 796, 811 [plaintiff "presented

17

sufficient admissible evidence . . . to create a triable issue," through expert declarations offered in summary judgment proceeding].) Further, "[t]he rule that a trial court must liberally construe the evidence submitted in opposition to a summary judgment motion applies in ruling on both the admissibility of expert testimony and its sufficiency to create a triable issue of fact." (*A.B. v. County of San Diego* (2025) 112 Cal.App.5th 404, 420.)

AVL lodged two expert declarations in the summary judgment proceedings.[10] First, it offered the declaration of Cindi Christenson, the former Chief Deputy Registrar of the CSLB. Christenson stated that in her role with the CSLB she "was the final decisionmaker on all matters involving the issuance or revocation of a California Contractor's license." Christenson opined "that the [CSLB] would determine that the emission testing equipment provided and installed by AVL does not require a California Contractors License because the work performed by AVL meets the exemption of . . . section 7045 for equipment vendors." Christenson also provided a detailed explanation for this conclusion. With respect to whether the "equipment provided by AVL are finished products that do not become a fixed part of the structure," Christenson stated that the CSLB would focus on "whether or not the . . . emission testing equipment, . . . was consumed into the structure and the removal would cause significant damage to the structure," and "whether or not the product is reusable after removal." In analyzing these factors, Christenson stated that, "All of the . . . equipment [at issue] is either mobile on casters or can be lifted or bolted in place where the

---

10      In light of the trial court's order that the parties were not required to refile declarations offered in support of their motions for summary judgment (see fn. 4, *ante*), it is undisputed that the expert declarations offered by AVL were properly before the trial court when it ruled on Hensel Phelps's motion for summary judgment.

18

bolts can be easily undone to remove the equipment. . . . If the equipment is connected to utilities or ducts, they can be disconnected and unbolted. For example, although a dynamometer [(dyno)] is heavy and can weigh up to 50 tons, the dyno is fastened in place by bolts and the bolts can easily be unfastened to maintain, remove or replace it. The space around it is designed so that it can be readily repaired and be lifted and set back in place by using a crane." Ultimately, with respect to this factor, Christenson concluded that the "CSLB would determine that the equipment is not consumed into the building and the removal would not cause damage to the building."

Christenson also opined that the "CSLB would also determine that the equipment which is bolted or connected to utilities and/or ducting is reusable." Christenson supported this conclusion in part by noting "AVL . . . operates a dyno movement/replacement service," and observing that, during the bidding process, the parties contemplated the possibility of moving emissions testing systems from another facility for re-use in the project.

AVL also offered the expert declaration of engineer Matt Levesque, which it had filed in connection with the parties' arbitration. Levesque stated that he had served as an "expert consultant" to the CSLB on numerous occasions and that he had also acted as expert in civil matters pertaining to contractor licensing. Levesque opined that AVL met the criteria for exemption under section 7045 as an "FFE installer" (fixtures, furnishings, or equipment).

Levesque stated that, in his opinion, "AVL's emissions testing equipment are FFE's" based on their "portability and removability" and their "ready-made nature." Levesque also described in detail the characteristics supporting these opinions. According to Levesque, the components of AVL's equipment were "mobile and can be disjointed by use of simple power tools

19

and a wrench," which "ma[d]e the test equipment textbook examples of FFEs." He added that "[c]ritically, all the components of the system can be removed without damaging the building because they are not consumed into any building system or structure and are not welded in place."

Levesque also noted that "AVL's equipment is also routinely upgraded and replaced after it is installed," and that the "system's components are also capable of being replaced independently of the entire matrix, . . . another hallmark of FFE systems as opposed to regular building systems." Levesque added that "AVL's equipment is pre-made and merely assembled on site" (italics and capitalization omitted), and that "[w]hile the test equipment is *connected* to the building systems, they are not built into the structure and remain freestanding, pre-made, and can be assembled off site or on site."

Levesque's declaration also discussed in detail the reasons that he thought that AVL's installation work did not require it to obtain a license. Specifically, Levesque explained why he thought that AVL's installation work was incidental to the overall project based on an analysis of the installation's purpose, cost, and time. Levesque also opined that AVL's contracting with licensed subcontractors on the project did not make AVL a general contractor.

The trial court did not exclude either of the expert declarations, and no claim has been made on appeal by Hensel Phelps that either of the declarations was inadmissible. Thus, in opposing summary judgment, AVL offered two reasoned admissible expert declarations directly supporting a finding that AVL was exempt from the CSLL pursuant to section 7045 because it only sold or installed "finished products, materials, or articles of merchandise that d[id] not become a fixed part of the structure." (§ 7045.)

In contrast, without analyzing either of the expert declarations offered by AVL or "explain[ing] why they were insufficient to create a triable issue of

20

material fact," (*A.B. v. County of San Diego, supra*, 112 Cal.App.5th at p. 419) the trial court ruled that section 7045 did not apply to AVL's work as a matter of law. While the court acknowledged AVL's contention that, pursuant to *Walker, supra*, 97 Cal.App.3d 842, "the emissions equipment it sold did 'not become a fixed part of the structure,'" under section 7045, it rejected this argument, reasoning in part: "There is no dispute about the facts regarding the terms of the contract and the work performed — this contract required a substantial amount of work that shows section 7045 did not exempt AVL from the requirement of having a contractor's license."

Such reasoning is faulty since, as the *Walker* court expressly concluded, in determining if section 7045 applies, "[w]hether the goods installed bec[a]me a fixed part of the structure is a question of fact." (*Walker, supra*, 97 Cal.App.3d at p. 847.) While the trial court suggested that it was free to decide this factual question on the ground that "[t]here is no dispute about the facts regarding the terms of the contract and the work performed" the same was true in *Walker* – there was no dispute in that case as to the contractual terms or the nature of the work performed there either. Nevertheless, the *Walker* court held that the ultimate question of whether goods installed become a fixed part of the structure is one of fact. (*Ibid*.)

Further, even assuming that the trial court credited Hensel Phelps's evidence that, as it summarized in its motion for summary judgment, AVL's scope of work on the project included "millions of dollars for, among other things, installing underground[] equipment, mechanical and plumbing systems, [and] electrical systems," such evidence does not establish that section 7045 is inapplicable as a matter of law. The expert declarations discussed above created a triable issue of material fact as to whether such

installation efforts, even if extensive, were for products that did not become a fixed part of the structure and thus were exempt under section 7045.

This is particularly true given that, in determining the complicated and multidimensional factual question of whether AVL's equipment had "become a fixed part of a structure," (§ 7045) the expert declarations, when considered in context with the text of the statute and case law interpreting the provision, demonstrate that a factfinder could reasonably consider a host of factors, including but not limited to:

> 1. How much time, cost, and labor were expended to install the products into the structure?
>
> 2. How much time, cost, and labor would be expended to remove the products from the structure?
>
> 3. Would removing the products damage them?
>
> 4. Would removing the products damage the structure to which they are connected?
>
> 5. How permanent are the physical connections between the products and the rest of the structure?
>
> 6. Are the products "ready-made" and can they be assembled off-site?
>
> 7. Is it common for the products to be removed and reused in other structures?
>
> 8. Are the products used independently of the structure in which they are installed?
>
> 9. Are the products designed to be replaced?
>
> 10. Are the connections between the products and the structure such that the public safety purpose of the CSLL would be furthered by requiring licensure?

11. Are the parts of the products that became attached to the structure incidental to those products or were they consumed by the structure?

In short, while the trial court found that the evidence before it established as a matter of law that AVL's equipment was attached to the structure through "substantial permanent connections," such a finding is erroneous given the complicated factual question at issue and the existence in the record of admissible expert opinions directly supporting a contrary factual finding. This conclusion is further supported by the fact that expert declarations in opposition to summary judgment must be liberally construed. (*A.B. v. County of San Diego, supra,* 112 Cal.App.5th at p. 420.)

Hensel Phelps's arguments in support of the court's order also are not persuasive. Hensel Phelps begins by referring to section 7045 as an "extremely narrow exception," but it provides no authority that supports this characterization, and we are aware of none. The text of section 7045, and particularly its use of the term "any," does not support such a narrow construction. (§ 7045 ["This chapter does not apply to the sale or installation of *any* finished products . . . ." (italics added)]; see, e.g., *Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 635 [" 'Any' is a term of broad inclusion, meaning 'without limit and no matter what kind.' "].)

Next, Hensel Phelps contends that "[t]he Legislature has continually narrowed Section 7045 since its initial enactment in 1939." The only amendment to section 7045, however, that it cites in support of this argument is a 1961 amendment to the statute providing that "[t]his chapter shall apply to the installation of home improvement goods, as defined in Section 7151." (Stats. 1961, ch. 1021, § 1, p. 2704.) That the Legislature excluded certain "home improvement goods" from the reach of the section 7045 exemption does not bear on whether AVL is exempt from licensure

23

pursuant to text that has been a part of California law in essentially the same form for nearly a century.  (See *Walker, supra*, 97 Cal.App.3d at p. 846, quoting Stats. 1933, ch. 573, § 2, p. 1484.)  Elsewhere in its brief, Hensel Phelps also notes that, in the wake of *Finley-Gordon Carpet Co., supra*, 247 Cal.App.2d 131 in which, as discussed above, the Court of Appeal concluded that a certain method of carpet installation fell within the section 7045 exemption (*Finley-Gordon Carpet Co.*, at p. 132), the Legislature amended section 7045 to provide that "[t]he term 'finished products' shall not include installed carpets."  (See Stats.1967, ch. 687, § 1, p. 2054).  As with the 1961 "home improvement" carveout, however, the fact that the Legislature narrowly excluded certain specific activities from the section 7045 exemption does not establish that the exemption itself is narrow.  Nor do such carveouts from the scope of section 7045 demonstrate that activities that indisputably fall outside of these carveouts, such as those at issue in this case, fall outside its reach.

Nor are we persuaded by Hensel Phelps's contention that *Banis, supra*, 134 Cal.App.4th 1035, *Johnson, supra*, 257 Cal.App.2d 714, and *King v. Hinderstein* (1981) 122 Cal.App.3d 430 (*King*), support the conclusion that the trial court properly granted Hensel Phelps judgment as a matter of law.  To begin with, and most importantly, none of these cases arose in the context of summary judgment proceedings.

*Banis*, which as noted above, the trial court "[found] . . . to be much more analogous . . . than *Walker*," involved whether the trial court abused its discretion in denying the plaintiff an opportunity to amend its complaint to allege facts demonstrating that it was not required to be licensed under the CSLL pursuant to section 7045.  (*Banis, supra*, 134 Cal.App.4th at p. 1042.)  The *Banis* court concluded that no abuse could be shown because "[s]uch an

amendment would directly contradict plaintiff's earlier pleadings." (*Id.* at p. 1045.)  The *Banis* court reasoned that this was so because the plaintiff had stated "a cause of action to foreclose a mechanics lien" that had "in essence asserted that the materials it provided were fixtures on the property." (*Ibid.*) Further, in distinguishing *Walker*, the *Banis* court emphasized that "*Walker* did not involve a mechanic's lien, leaving open the question of whether the contract involved personal property or fixtures." (*Id.* at p. 1046.)  Here, in contrast, AVL never filed a pleading conceding that its work was not subject to section 7045, and, in opposing Hensel Phelps's motion for summary judgment, it presented evidence demonstrating that this remains a "question . . . to be answered." (*Banis*, at p. 1046.)

*Johnson, supra*, 257 Cal.App.2d 714, involved whether plaintiffs could recover compensation for "services rendered and materials furnished in the preparation of the grounds" for a baseball school.  (*Id.* at p. 716.)  In *Johnson*, during the trial, the trial court granted the defendants' motion to dismiss on the ground that plaintiffs were not licensed under the CSLL as required. (*Ibid.*)  In affirming in part,[11] the Court of Appeal rejected plaintiffs' contention that section 7045 excused their nonlicensure, reasoning, "[S]igns mounted in cement [are not] 'finished products [or] materials . . . which do not become a fixed part of the structure. . . .' " (*Johnson*, at p. 718.)  The *Johnson* court added, "Section[] 7045 . . . [was] intended to apply to installations in which construction activity is merely incidental, such as the

_____

11    The *Johnson* court reversed the trial court's judgment insofar as it precluded the plaintiffs from recovering for their furnishing of tractors and mowers for the school.  The *Johnson* court explained that "[r]ecovery by an unlicensed contractor for the sale of goods is in no way barred by sections 7026 and 7031," noting that, under section 7045, an "unlicensed contractor may recover for the 'sale . . . of any finished products . . . which do not become a fixed part of the structure.' " (*Johnson*, at p. 719.)

installation of kitchen appliances (*E.A. Davis*[, *supra*, 120 Cal.App.2d 237]), and not to the installation of a sprinkler system, which is constructed out of lengths of pipe and buried in the ground where it is intended to be used." (*Johnson*, at p. 718.)

The fact that the *Johnson* court tersely concluded that the installation of a sprinkler system and signs mounted in cement used in the construction of a baseball school did not fall within the scope of section 7045 says very little about the distinct factual question of whether the complex installation of vehicle emissions testing equipment in the building at issue here is within the statute's scope. Moreover, since *Johnson* did not involve an appeal from a summary judgment, the case does not support the proposition that it is proper to grant summary judgment notwithstanding the existence of expert declarations demonstrating the existence of a triable issue of material fact pertaining to the applicability of the section 7045 exemption.

Finally, *King* did not raise a question under the CSLL. (*King, supra*, 122 Cal.App.3d at p. 442.) *King* involved whether a judgment could be affirmed in favor of a defendant on the ground that the "installation of a prefabricated swimming pool and the related work thereto is covered by statutes [contained in the Civil Code] designed to govern transactions between customers and contractors engaged in the construction of swimming pools." (*King*, at p. 436.) *King* does not govern here for two fundamental reasons. First, since the *King* court discussed the CSLL only by way of analogy (*King*, at p. 441 [discussing its views on "*analogous* provisions in the [CSLL]" (italics added)]), it "supplies no precedent here." (*Steinbrenner v. J.A. Waterbury Constr. Co.* (1963) 212 Cal.App.2d 661, 665 [distinguishing precedent and "analogy"].) In any event, the *King* court recognized that "a question of fact is involved in determining when installation activities of a

26

builder are subject to the contractor licensing laws." (*King*, at p. 442, citing *Walker, supra*, 97 Cal.App.3d at p. 847.) In short, the fact that the *King* court concluded that "*substantial evidence* support[ed] the trial court's finding that [the plaintiff] contracted for both 'construction and installation of a prefabricated swimming pool on [the] Defendant's property,' " under the *Civil Code* does not support the trial court's *summary judgment* under the *CSLL* here. (*King*, at p. 442, italics added.)

Hensel Phelps also notes that AVL specifically prepared license applications for this project and that the CSLB determined that "only the A General Engineering classification is appropriate for this purpose." Hensel Phelps argues that we should give "substantial, if not conclusive, weight" to the CSLB's "licensure determination." (Bold and capitalization omitted.) We are not persuaded. Hensel Phelps points to neither statutory nor case law authority demonstrating that the fact that the CSLB granted a license to a company for a project demonstrates that the CSLB determined that such a license was required under the law. While Hensel Phelps properly notes that "[a]n agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts" (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7), the CSLB has provided no such statutory interpretation related to this case. Thus, *Yamaha* is inapposite. In addition, in her expert declaration, Christenson stated that "the [CSLB's] issuance of a license is *not* a determination that the work presented by an applicant to qualify for licensure in fact requires a license to be performed." (Italics added.) Under these circumstances, Hensel Phelps is not entitled to affirmance of the summary judgment on the ground that AVL applied for and was granted a license from the CSLB for the project.

Hensel Phelps also points to AVL's alleged "acknowledgements" of the need for licensure, citing several bid certifications from AVL that stated that "a valid California contractor's license is a requirement for execution of the Subcontract Agreement," a November 9, 2018 e-mail from an AVL employee acknowledging the need for a contractor's license, and AVL's application for such a license. In addition, Hensel Phelps points to statements made by AVL in various pleadings and in its brief in this court pertaining to the nature of the work it performed. While AVL's views of the need for a license could reasonably be considered by a factfinder in determining the nature of the work AVL performed and the contractual obligations it assumed, whether AVL thought it needed a license or not is not dispositive to the question of whether the CSLL was violated. Instead, section 7031, subdivision (a) looks to whether a party is seeking compensation " 'for the *performance* of any act or contract where a license is required . . . without alleging that he or she was a duly licensed contractor at all times during the *performance* of that act or contract.' " (*MW Erectors, supra*, 36 Cal.4th at p. 435; see *id*. at p. 430 ["[S]ection 7031 precludes court recovery for any *work performed* under an agreement for construction services unless the contractor was duly licensed . . . with respect to *all* the *work performed* thereunder" (italics added)].) Therefore, evidence suggesting that AVL thought that it needed a license for the project is not a sufficient basis to affirm the summary judgment.[12]

Finally, Hensel Phelps cites generally to the evidence that it presented in support of its motion for summary judgment that it argues establishes that

[12] For the same reason, in part II.D, we reject AVL's argument that the existence of evidence suggesting that the parties behaved as if AVL did not need a license demonstrates as a matter of law that no such license was required.

28

AVL's "equipment [was] permanently attached to the Project's structure (e.g., through welding, bolting, anchors, seismic bracing, penetrations through walls and ceilings) and the underlying realty (e.g., conduit buried in concrete), as well as integrated mechanical, electrical, and plumbing systems." While, as we describe further below, we agree that a reasonable factfinder could find, based on evidence in the record, that AVL's products became a fixed part of the structure and therefore that AVL was not exempt under section 7045, we disagree that this finding was compelled as a matter of law. That is because AVL presented evidence on which a reasonable factfinder could alternatively find, as AVL argues in reply, "that its equipment is designed to be removable and replaceable, and therefore any infrastructure connections are not 'permanent' in the sense of making AVL's equipment a 'fixed part of the structure.' "

In sum, we conclude the trial court erred in determining that there was no triable issue of material fact as to whether AVL's products became a fixed part of a structure such that the exemption provided for in section 7045 did not apply to AVL as a matter of law.[13] Accordingly, we further conclude that the trial court erred in granting Hensel Phelps summary judgment on the ground that AVL would not be able to establish its entitlement to a declaration that section 7031, subdivision (a) did not bar its claims for compensation.

---

[13] In light of this conclusion, we need not consider AVL's additional arguments in support of reversal of the judgment in favor of Hensel Phelps. Specifically, we need not consider AVL's argument that Hensel Phelps's motion for summary judgment did not sufficiently negate AVL's claim of exemption under section 7045 or AVL's contention that the trial court erred in overruling its evidentiary objections.

D.

AVL further contends that the trial court erred in denying its motion for summary judgment. Specifically, AVL maintains that it was entitled to judgment as a matter of law on its cause of action for a declaration that section 7031, subdivision (a) did not bar its claim for compensation. AVL argues that this is so because it demonstrated, as a matter of law, that neither AVL nor its subcontractors installed products that became a fixed part of a structure under section 7045. Thus, according to AVL, the trial court should have concluded that section 7045 applied as a matter of law. We disagree.

Again, we need to look no further than an expert declaration in the record to determine that a triable fact existed with respect to the applicability of the section 7045 exemption. (See, e.g., *Willhide-Michiulis, supra*, 25 Cal.App.5th at p. 354 ["a party opposing a motion for summary judgment may use declarations by an expert to raise a triable issue of fact"].)

In opposing AVL's motion for summary judgment, Hensel Phelps lodged the expert declaration of Robert Lucas. In his declaration, Lucas stated that he had been employed by the CSLB from 1992 to 2005, during which time he had worked on "difficult enforcement and licensing disputes." Lucas also explained that he was "familiar with the standard of practice within the construction industry regarding the licensure of professional contractors," and that he was prepared to "testify regarding the CSLL and its applicability to . . . AVL's work on the project at issue."

Lucas reached several "core opinions," including that "at all times during AVL's work on the Project, AVL was required to hold a California contractor's license," and "the work performed by AVL and its subcontractors is not exempt from the requirements of a contractor's license under . . .

30

[s]ection 7045." Lucas also explained the reasoning behind these conclusions. According to Lucas, "AVL's scope involved substantial design and construction work implicating a number a different trades or crafts – including design and engineering, mechanical, electrical, piping, plumbing, sheet metal, earthwork/paving, and welding, among others. As examples, AVL's work involved installing mechanical equipment such as dynamometers, blowers/fans, chillers, ducting, and permanent seismic restraints, with penetrations through floors, ceilings, and walls, and permanent anchoring through bolts, welding, and embeds; electrical calculations and installation work, including conduit encased in concrete underneath the building structure; and installation of plumbing materials and piping for fluids and gases."

Lucas also opined that AVL's contention that its work was exempt under section 7045 was "incorrect." Lucas reasoned in part that, "[t]he materials and equipment installed as part of AVL's work were permanently attached or affixed to the Project's structure (e.g., through welding, bolting, anchors, seismic bracing, penetrations through walls and ceilings) and the underlying realty (e.g., conduit buried in concrete)." Lucas also added that "AVL's work included integrated processes (e.g., piping, electrical, ductwork, controls), with the emissions equipment being integral to the facility, and many of the moveable pieces of equipment or materials being of substantial size and weight."

Lucas also disagreed with Christenson's conclusion with respect to the significance of the CSLB's issuance of a license to AVL, calling it "flawed and incorrect[]." According to Lucas, because "AVL's license applications were specifically tailored for its work on the Project," the CSLB's licensure issuance meant that AVL was "required to obtain a license."

31

Since AVL does not contend on appeal that the Lucas declaration was inadmissible, as we explained above in our consideration of Hensel Phelps's motion for summary judgment, the record contains a reasoned admissible expert opinion directly supporting the existence of a triable issue of material fact with respect to applicability of the section 7045 exemption.

Moreover, in addition to Lucas's expert opinion, in opposing AVL's motion for summary judgment, Hensel Phelps also presented considerable additional evidence on which a reasonable factfinder could find that AVL or its subcontractors installed AVL's products such that they became a fixed part of a structure and the exemption provided for in section 7045 did not apply. For example, Hensel Phelps presented the declaration of a project manager on the project who provided a detailed description of the ways in which AVL's products were installed in the structure. From this description, a reasonable factfinder could determine that AVL's products became a fixed part of the structure.[14] In light of such expert opinion and relevant evidence, we reject AVL's argument that "the record is uncontradicted that AVL's equipment is removable and not a fixed part of any structure."

Nor are we persuaded that *Walker, supra*, 97 Cal.App.3d 842, *E.A. Davis, supra*, 120 Cal.App.2d 237 or *Costello, supra*, 81 Cal.App.2d 452, each of which we have discussed above, supports the conclusion that the trial court erred in denying AVL's motion for summary judgment. While AVL contends that these cases are "controlling" (bold and capitalization omitted), as was true with respect to Hensel Phelps's primary authorities (see pt. II.C, *ante.*),

---

[14]    Hensel Phelps referred to such evidence in its separate statement of undisputed facts. Thus, we reject AVL's argument that we may disregard Hensel Phelps's evidence under the "Golden Rule of Summary Adjudication," namely that if the evidence " 'is not set forth in the separate statement, *it does not exist.*' "

32

none of these opinions state that they involved summary judgment proceedings. (See *Walker*, at pp. 847–848; *E.A. Davis*, at p. 238; *Costello*, at p. 453.) Further, as we also explained above, the question of whether a product became a fixed part of structure under section 7045 is a deeply factual one that turns on a multitude of factors. And each of these cases involved a factual scenario wholly distinct from that at issue in this case. (See *E.A. Davis*, at p. 238 ["installation of a patented kitchen unit"]; *Walker, supra*, 97 Cal.App.3d at pp. 843–844 ["manufacturer of metal prefabricated restrooms," who "agreed to furnish, assemble, and install the unit"]; *Costello*, at p. 453 ["installation of two cold storage plants on defendant's premises to be used in the operation of a hatchery and poultry ranch"]). Thus, none of these cases demonstrate that AVL established, as a matter of law, that the vehicle emissions testing equipment at issue in this case had not become a fixed part of a structure under section 7045.

AVL also contends that the trial court erred in failing to apply Civil Code section 1643 to interpret its contract with Hensel Phelps as being lawful. (See Civ. Code, § 1643 ["A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties"].) In support of this contention, AVL raises a series of contractual interpretation arguments, all of which rest on the proposition that the trial court erred in failing to interpret the parties' contract as providing that AVL was not required to hold a contractor's license. These arguments all fail because, as we explained in connection with consideration of Hensel Phelps's motion for summary judgment, whether the parties thought that AVL needed a contractor's license to perform the scope of work

provided for in the contract is not dispositive of the question of whether the CSLL was in fact violated.

More specifically, AVL contends that the trial court was required to interpret the contract as permitting AVL to perform the contract's scope of work without a license in accordance with Civil Code section 1643 because Hensel Phelps, as a general contractor, could not "legally hire an unlicensed subcontractor to perform work requiring a license." This argument is unpersuasive because section 7031, subdivision (a) did not preclude AVL from recovering on a contract requiring the performance of a work requiring a license so long as AVL obtained a license before *performing* the contract. (*MW Erectors, supra*, 36 Cal.4th at p. 419 [stating that if a contractor is "fully licensed at all times during contractual *performance*, a contractor is not barred from recovering compensation for the work solely because he or she was unlicensed when the contract was *executed*"].) Thus, we are not persuaded that Civil Code section 1643 requires that the parties' contract be interpreted as not requiring licensure for its performance. Alternatively, the parties may have been mistaken or misinformed about the need for a license, or they may have intended for AVL to perform the contract while unlicensed, even if one was required. But we are not persuaded that, assuming the parties did not think the CSLL would apply, this means that we must conclude that the CSLL did not in fact apply.

In sum, we conclude the trial court did not err in concluding that AVL failed to establish as a matter of law that its products did not become a fixed part of a structure such that the exemption provided for in section 7045

applied as a matter of law.[15]  Accordingly, we further conclude that the trial court did not err in denying AVL summary judgment since AVL failed to establish its entitlement to judgment as a matter of law on its cause of action for declaratory relief.

## DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.  Each party is to bear its own costs on appeal.

BUCHANAN, J.

WE CONCUR:


McCONNELL, P. J.


CASTILLO, J.

---

[15]    In light of this conclusion, we need not consider Hensel Phelps's suggestion that AVL's use of licensed subcontractors to install its products demonstrated that AVL was not exempt under section 7045, irrespective of whether its products became a fixed part of a structure.

35